CHARLES G. JONES, APPELLEE, v. CHICAGO GREAT WESTERN RAILROAD COMPANY, APPELLANT.

FILED DECEMBER 4, 1914. No. 17,721.

1. **Railroads:** RECEIVER'S SALE: LIABILITY OF PURCHASER. A decree, requiring the purchaser of a railroad at a receivers' sale to pay, in addition to the bid, all liabilities incurred by the receivers in their operation of the road, includes the damages recoverable in an action at law for personal injuries to one of their railroad employees.

2. ———: ACTION FOR INJURY TO EMPLOYEE: PETITION: SUFFICIENCY. In an action for personal injuries, a petition pleading facts which entitle plaintiff to relief under the doctrine of the last clear chance will not be *held* insufficient on appeal, because the principle of law under which he is entitled to a recovery is not stated.

3. **Trial:** INSTRUCTIONS. An instruction, stating the law applicable to an issue of fact established in plaintiff's favor by the evidence without dispute or contradiction, is not erroneous, because it fails to require a finding on that issue as a condition of granting him relief.

4. **Contributory Neligence:** QUESTION FOR JURY. Where the evidence on a controverted issue of contributory negligence in an action for personal injuries is sufficient to sustain a verdict for plaintiff, the disputed question of fact is one for the jury.

5. **Railroads:** INJURY TO SWITCHMAN: NEGLIGENCE: EVIDENCE. In the switch yards of railroads the speed of an engine on a track upon which switchmen stand at regular times and places daily, pursuant to a known custom, for the purpose of giving signals, may be evidence of negligence where such engine approaches without signal or warning of any kind.

6. **Evidence:** ANNUITY TABLES. In an action for personal injuries resulting in the permanent impairment of plaintiff's earning capacity, annuity tables are admissible in evidence and may be considered by the jury in connection with other competent proofs.

7. **Damages.** A verdict for $16,000 for personal injuries, under the facts disclosed by the record, *held* not excessive.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*William D. McHugh* and *W. H. Herdman,* for appellant.

*Mahoney & Kennedy, contra.*

ROSE, J.

Plaintiff brought this action to recover damages in the sum of $30,000 for personal injuries. From a judgment on a verdict in his favor for $16,000, defendant has appealed.

Plaintiff was the head brakeman and a switchman on a local Union Pacific freight train running regularly between Omaha and Columbus. While he was watching this train as it ran southward on a Union Pacific track at a switch near South Omaha, where he was required to signal the engineer for switching purposes, an engine running backward in the same general direction on the Chicago Great Western track ran against him. He had gone upon that track at the regular time and place pursuant to a daily custom known to a switching crew in charge of the engine which struck him. He was knocked down, but clung to the engine and was dragged beneath it. As a result he lost a foot and three fingers and was severely shocked. At the place of the injury tracks of the two railway systems run side by side in a curve, the Chicago Great Western track being four or five feet west of the nearest Union Pacific track. The side of the cab occupied by the engineer to whom plaintiff gave signals was on the convex of the curve. Plaintiff dropped off his own train and went westward onto defendant's parallel track, where the engineer on the Union Pacific engine was within the line of

vision. In a foreclosure suit brought by bondholders in a circuit court of the United States, the Chicago Great Western Railway Company went into the hands of receivers, January 8, 1908. Plaintiff was injured about 9 o'clock in the forenoon, August 27, 1909, during the existence of the receivership. The property and interests of that corporation and of the receivers were sold to the Chicago Great Western Railroad Company, defendant, August 29, 1909. Plaintiff pleaded facts and adduced proof tending to show, in substance, that he was in the necessary discharge of his duties, acting pursuant to a long-established custom, when injured; that he exercised due care and caution; that there was no negligence on his part; that, while he was giving signals at the time and place mentioned, the receivers, without notice or warning, without ringing a bell or blowing a whistle, with full knowledge of his customary presence, carelessly and negligently backed their switch engine against and over him; that the injury was inflicted in broad daylight when the sun was shining; that the receivers, by the exercise of ordinary care, could have seen plaintiff for a distance of several hundred feet before running him down; that, though the engine which struck him could have been stopped in ten feet, the receivers negligently and wantonly refrained from stopping it, but continued to run it about 142 feet, dragging and crushing him; that the damages which the receivers caused in their railroad operations are recoverable from defendant. The answer, in addition to denying negligence, contains a plea of contributory negligence, and alleges that in becoming the purchaser at the receivers' sale defendant did not incur any liability for injuries to plaintiff.

The first assignment of error is directed to the giving of an instruction containing the following language: "When plaintiff was injured the railroad, which was mentioned in the testimony in this case as the Chicago Great Western Railway was being operated by receivers appointed by the United States circuit court. Shortly after plaintiff's injury said railroad property was, pursuant to a sale made by said United States circuit court and cer-

tain orders and decrees in connection therewith, turned over to the defendant herein, Chicago Great Western Railroad Company as the purchaser thereof. In buying said railroad property the defendant herein, under the orders and decrees of the United States court, obligated itself to pay all liabilities that were incurred by the receivers in the operation of the Chicago Great Western Railway Company. You are therefore instructed that if, under the evidence and instructions of the court, you should find that plaintiff's injuries were inflicted under circumstances that would have entitled plaintiff to recover damages from said receivers of the Chicago Great Western Railway Company, then the defendant herein would be liable to plaintiff for the amount of such damage."

The orders and decrees to which reference is thus made impose upon the purchaser the following obligations:

"As a part of the consideration for the property purchased, the purchaser shall take the property and shall receive the deed therefor upon the express condition that, in addition to the sum bid therefor, the purchaser shall pay and discharge all the following claims which are not paid by the amount bid: * * * (a) All indebtedness, obligations or liabilities which by such receivers shall have been contracted or incurred in the operation or on account of the property of the said Great Western Company at any time before the same shall have been delivered to the purchasers, or in the discharge of their duties as receivers at any time before they are finally discharged. * * * The purchaser shall pay any of the claims described in clauses 'a' and 'b' which are established or unquestioned, and any disputed claims when allowed by the master, without objection, or by the court, and they shall pay to the master or into court the moneys required to discharge the same from time to time as the court may direct."

It is argued that the instruction is erroneous, because defendant, in purchasing the property of the Chicago Great Western Railway Company and of the receivers on the terms fixed by the decrees and orders of the federal court,

did not incur any liability to plaintiff for the injuries pleaded in the petition. Defendant states its position as follows: "Under the plain language of the decree of sale defendant assumed and agreed to pay, first, claims which are unquestioned or established; and, second, any disputed claims when allowed without objection by the master or by the court. As to disputed claims defendant's assumption of payment thereof was conditional on the same being first allowed by the master, without objection, or by the court." It is asserted by defendant that plaintiff's claim is not within either class.

On the other hand, plaintiff takes the position that the last clause quoted from the decree does not impose a condition of liability, but merely sanctions an equitable remedy which is not exclusive, and insists that damages caused by the receivers in the operation of the railway are recoverable in an independent action at law against the purchaser.

The decree on its face shows that payment of the bid is not the full measure of the purchaser's liability. Provision is made in direct terms for the payment of other liabilities and obligations. Is plaintiff's claim one of them? In the management of the railroad the liabilities created by the receivers, except for individual or personal misconduct, were official, and a valid claim or a judgment against them in their representative capacity is in effect a liability against the property under their control. In directing receivers the federal courts keep these principles in mind. It will not be presumed, in construing a decree directing a sale by receivers, that the federal court intended to relieve railroad property from a lawful and just claim growing out of the operation of the railroad while in their hands. Such claims may exist at the time of the sale, though there has not yet been an opportunity to adjudicate or to allow them in any judicial proceeding. Under the orders of the court the earnings of the carrier may be put into improvements, while liabilities created by the receivers remain unpaid. The decree was not intended to wrong those having legal claims or to devise means for re-

leasing corporate property from just burdens.   The meth-
ods of adjustment provided by the court of equity were not
intended to be exclusive.   Remedies at law were not cut
off.   The terms of the decree show a purpose to hold the
purchaser responsible for liabilities incurred by the re-
ceivers in the operation of the railroad.   These observa-
tions are in harmony with the decisions of the federal
courts and are prompted by justice and the integrity of
judicial proceedings wherein railroad property is managed
and sold by receivers.   *Hanlon v. Smith,* 175 Fed. 192;
*Thompson v. Northern P. R. Co.,* 93 Fed. 384.   In these
respects the trial court, therefore, did not err in giving
the instruction criticised by defendant.

The next assignment of error challenges an instruction
submitting to the jury an issue as to the right of plaintiff
to recover damages under the doctrine of the last clear
chance.   Defendant insists that facts authorizing a recov-
ery based on that rule of law are not pleaded, and that
therefore the trial court erroneously submitted an issue
not tendered by the pleadings.   On the record presented
the point is too narrow and technical.   That issue was
tried.   There was evidence on both sides.   While plaintiff
in his petition did not plead in legal phraseology the prin-
ciple on which he seeks relief, he pleaded facts showing
that he was negligently injured after his peril had been
discovered.   The grounds on which plaintiff sought relief
were not only understood by defendant and tried by the
parties, but the facts on which plaintiff based his right
of recovery were stated in the petition.   For these reasons,
the assignment is overruled.

Further argument is directed to the point that the trial
court erred in permitting a recovery under the doctrine
of the last clear chance after plaintiff was struck, without
requiring a finding that the switching crew on the Chicago
Great Western track had actual knowledge of that fact.
Such actual knowledge was shown by defendant's wit-
nesses without dispute or contradiction, and a statement
to that effect to the jury would have been proper.   It fol-
lows that defendant was not prejudiced by the instruc-

tion assailed, and that reversible error in this particular is not shown.

An instruction on the duty of plaintiff to look and listen before going onto defendant's track and on the law applicable to proof of contributory negligence on his part is also criticised as erroneous. On those subjects the trial court, among other things, said:

"As to just what time he should look and listen before going on the track is for you to determine from all of the facts and circumstances in evidence before you. In this case if you believe from a preponderance of the evidence that plaintiff did not take such precautions as to his own safety as an ordinarily prudent person would have done under like circumstances and surroundings, and if you further find that such failure on the part of plaintiff caused or contributed to his injury, then you should find that he was guilty of contributory negligence. If, on the other hand, you believe that he did take such precautions as to his safety as an ordinarily prudent person would have done under like circumstances and surroundings, then you should find he was not guilty of contributory negligence."

In this connection defendant assigns error in the refusal of the trial court to give the following requested instruction:

"Plaintiff, in going upon the track of the defendant company without looking for the approach of the engine after he dropped off his train at the main-line switch, was guilty of negligence."

Whether there was error in these rulings depends upon the evidence. There is proof tending to show: Plaintiff dropped off his engine at what is called the "inside switch," lined it, climbed onto a ladder on the side of one of the cars of his train while it was running southward, rode about 125 feet to a place described in the record as the "main-line" switch, again dropped off and went upon the Chicago Great Western track to give signals at the place of the injury. This was a repetition of what had occurred regularly at the same hour for a long time. The custom was

familiar to the switching crew on the Chicago Great Western engine. When plaintiff was injured his attention was directed to his own train, it being his duty to signal the engineer thereof when the last car passed over the main-line switch. When he got off at the inside switch he looked and saw no engine on the Chicago Great Western track, though he could see backward along it 300 or 400 feet. While he was clinging to the ladder he again looked, with the same result. At the main-line switch his train was running five or six miles an hour. The distance from the place where he alighted at the main-line switch to the center of the Chicago Great Western track, where he was struck, was about twelve feet. The engine which struck him was backing southward as fast as 12 or 15 miles an hour and ran 152 feet after the collision. There is evidence from which a higher rate of speed may be inferred. Of the approach there was no warning by bell or whistle. Plaintiff's own train necessarily made considerable noise. From the circumstances narrated, when considered in connection with other proofs, it may fairly be inferred that plaintiff looked for an approaching engine a few seconds before he went upon defendant's track, and saw none. Though the evidence is conflicting in many respects, there is proof tending to establish the facts narrated. It follows that the evidence is sufficient to sustain a finding that plaintiff was not guilty of contributory negligence. That issue, therefore, was properly submitted to the jury, and the rulings of the court thereon were not erroneous.

The trial court refused, on request of defendant, to give an instruction that a speed of 12 or 15 miles an hour was not unreasonable or excessive, and that the jury had no right to find defendant guilty of negligence solely on proof of that rate of speed. This ruling is also assigned as error. The point is not well taken. There is testimony which, if believed, tends to show that the engine on the Chicago Great Western track ran faster than 12 or 15 miles an hour. Besides, the custom, facts and circumstances proved made the requested instruction, in the form submitted to the trial judge, inapplicable to the condi-

tions existing in the switch-yards at the time and place of
the injury. Other rulings in refusing instructions are
criticised, but they do not contain prejudicial error.

Another assignment of error presented is the admission
in evidence of annuity tables issued by the National Life
Insurance Company. The judgment cannot be reversed on
this ground. It was shown by other proofs that plaintiff
was 36 years old at the time of the collision and that he
was permanently injured. His expectancy of life and his
earning capacity before and after the injury were also
shown. It is a well-established rule of evidence that, in
an action for personal injuries resulting in the permanent
impairment of plaintiff's earning capacity, annuity tables
may be admitted in evidence and considered by the jury
in connection with other competent proofs. *Vicksburg
& M. R. Co. v. Putnam*, 118 U. S. 545; *Baltimore & O. R.
Co. v. Henthorne*, 73 Fed. 634; *McKeigue v. City of Janes-
ville*, 68 Wis. 50; *Reynolds v. Narragansett Electric Light-
ing Co.*, 26 R. I. 457; 17 Cyc. 422. Defendant asserts, how-
ever, that the document introduced by plaintiff shows the
prices at which the National Life Insurance Company of-
fers annuities for sale, without proof that such prices are
fair and reasonable, and draws the conclusion that the
evidence was erroneously admitted. According to the
proofs applicable to this question, the tables introduced
in evidence show the lowest rate at which annuities can
be purchased. They were therefore at least as favorable
to defendant as rates proved according to the standards de-
manded by it. When all the testimony relating to these
tables is considered, error in admitting them does not af-
firmatively appear.

Under the final assignment of error the verdict for
$16,000 is vehemently assailed as excessive, but the rea-
sons urged by defendant for setting it aside on that ground
do not seem to be sufficient to warrant an interference with
the work of the jury. There is no definite rule for meas-
uring some of the damages inhering in the verdict. The
injuries inflicted by defendant were distressing, and the
amount allowable for pain and suffering cannot be com-

puted on any exact basis.　Plaintiff was 36 years old, and it cannot be asserted that the prospect of increasing his earnings had passed.　Whether his physical condition as indicated by the evidence gave promise of a longer life than the expectancy shown by mortality and annuity tables is a perplexing problem on appeal.　He lost time and incurred expenses when he was helpless.　The evidence is sufficient to sustain a finding that his earning capacity was at least $1,200 a year before he was injured and not over $400 a year at the time of the trial.　The jury may have found that his earnings would have increased, except for his injuries, and that hereafter they will decrease. When all of the damages are considered in connection with the discretion of the jury in measuring indefinite though substantial elements of recovery, where there is no exact method of computation, excess in the verdict is not affirmatively shown.

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.