AGNES A. ROH, A MINOR, BY W. F. ROH, HER FATHER AND NEXT FRIEND, APPELLANT, v. JOSEPH OPOCENSKY, APPELLEE.

FILED MARCH 30, 1934. No. 28797.

*Frost, Hammes & Nimtz* and *Frederick L. Wolff,* for appellant.

*Kennedy, Holland & DeLacy, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and BEGLEY, District Judge.

PAINE, J.

This is an action for damages for personal injuries suffered as a result of an automobile overturning. The jury returned a verdict for the defendant.

Plaintiff and appellant, Agnes A. Roh, who brings this

action through her father, was 17 years of age when she was injured while riding in a new Willys Six automobile driven by appellee's wife on a dirt road near Abie, Butler county, Nebraska, upon June 29, 1931. This was prior to the time the present guest law statute became effective in Nebraska, and, therefore, the law in force at that time only required the plaintiff to prove ordinary negligence.

It was charged in the petition that defendant's wife was an inexperienced driver, and was negligent in the following particulars: That she drove the car at a rate of speed greater than was reasonable and proper, and at such speed as endangered the life and limb of the plaintiff, and while going at such a rate of speed the automobile swerved from side to side, and that the driver, acting in utter disregard of prudence, removed her hands from the steering wheel, and acted in complete neglect of the safety of the plaintiff. That the automobile upset and came to rest on its top, and that plaintiff suffered permanent injuries to her nose, upper jaw, skull, brain, nervous system, digestive and generative organs; that her upper lip was deeply cut; that she was permanently scarred and disfigured; and that she suffered many other injuries, all as set out in the petition. The answer admits that the defendant owned the Willys Six automobile; denies the other allegations contained in the plaintiff's petition; and alleges that the defendant's wife, as a gratuity and for the pleasure of the plaintiff, was taking her to a certain church, and that the accident which occurred was an unavoidable accident, and not the result of negligence.

In the assignment of errors it is contended that the trial court erred in giving certain instructions, and in the refusal of the court to allow the introduction of certain res gestæ evidence.

In examining the error alleged in regard to the refusal to admit the res gestæ evidence, the evidence of Mrs. Helen Stava, who was sitting immediately behind the driver, discloses that Mrs. Opocensky, the defendant's wife, who was driving the car, got out of the car after

the accident and began to talk right away. "Q. How soon after Mrs. Opocensky left the car did she begin to speak? A. She was saying right there, 'My God, I killed you'—(interrupted). Mr. DeLacy: Wait a minute; you know better than that. The witness: Do I? The Court: When objection is made, don't answer the question." This discloses that Mr. DeLacy was addressing the witness instead of the court, and the record does not disclose that any legal objection whatever had been made by him.

"Q. 73. And what was the first thing that she said? Mr. DeLacy: Objected to as hearsay, incompetent, irrelevant and immaterial. The Court: I will sustain the objection. * * * Q. 75. Well, where was your father's car at the time you got out? A. Where was my father's car? Q. Yes. A. When I was crawling out of the door I saw it coming over the hill, and then he drove right on up and jumped off the running board and came up towards the car. Q. And what time with reference to that did Mrs. Opocensky get out of the car? A. What time? Q. How soon, when with reference to that? A. She was out of the car when my father came. Q. Well, when was this time she began to talk with reference to the time your father arrived? Did she begin to talk before your father arrived? A. Yes; she talked some before then, but after he did, too. Q. I am not concerned with what happened after he came up, but what I am asking now is how soon it was after the car turned over and you got out that she got out and began to talk? Mr. DeLacy: Objected to as immaterial. The Court: I don't see the materiality of it. Q. What did she say there? Mr. DeLacy: Objected to as immaterial and hearsay. The Court: Objection sustained. Mr. Wolff: We offer to prove by the witness on the stand the answer would be as follows: (263) 'She says, "Oh, my God! Mrs. Roh, here I was trying to give you a thrill, and I have just about killed you; what will I do?" and she was terribly excited; she says, "I wasn't going fast, I was just going to give you a roller-coaster thrill on the hill." ' "

When the driver of the car was on the witness-stand, the plaintiff endeavored to draw out this statement upon cross-examination, and the record made was as follows: "Q. 1036. Did you, Mrs. Opocensky, say that—(interrupted). Mr. DeLacy: Wait a minute. He is trying to get in a conversation that is improper, and it is not proper cross-examination. The Court: Well, I cannot tell. He may ask the witness if she didn't say a certain thing, expecting to meet that later on in rebuttal. Mr. DeLacy: What he is going to ask now has nothing to do with any impeachment. The Court: I will sustain the objection as not proper cross-examination and immaterial. Mr. Wolff: I would like to complete the question. The Court: No—make your offer. Mr. Wolff: Plaintiff offers to show, if the witness were permitted to answer, she would say that at that time she said, 'Oh my God! Mrs. Roh, here I was trying to give you a thrill, and I have just about killed you; what will I do? I wasn't going fast, I was just going to give you a roller-coaster thrill on the hill; and now, here, you are going to be in bed, and doctor bills.' "

■ *Res gestæ* means "things done" at the transaction being investigated, and includes not only the facts and circumstances of the occurrence, but also the declarations made under the immediate spur of, and as a part of, the main transaction. *Collins v. State,* 46 Neb. 37.

Whenever the bodily or mental feelings are material, the expressions are the natural reflexes of what it might be impossible to show by other testimony.

*Res gestæ* may be said to be the act speaking for itself, not what bystanders say when telling about the act. *Res gestæ* embraces all those circumstances which are the undesignated incidents of, and illustrative of, the main act. The lapse of time between the occurrence and the utterance may be more or less, provided the declaration is connected with and caused by the event and tends to explain it, and is not made as an afterthought.

"Since this utterance is made under the immediate and

uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." 3 Wigmore, Evidence, sec. 1747.

■ The principles of evidence governing the admission of *res gestæ* have been broadened and developed by an effort to afford the triers of fact all reasonable means of ascertaining the truth, instead of withholding from them all information possible by the rigid application of certain rules of exclusion. The question is not now, how little, but how much, logically competent proof is admissible. 10 R. C. L. 975, sec. 158; *Stukas v. Warfield-Pratt-Howell Co.*, 188 Ia. 878; *Roach v. Great Northern R. Co.*, 133 Minn. 257; *Commonwealth v. Gardner*, 282 Pa. St. 458; *Ward v. Lane*, 189 Ala. 340; *State v. Evans*, 89 W. Va. 379.

*Res gestæ*, although in fact hearsay evidence, is admitted because it is so closely connected with the main transaction as to be a part of it. Spontaneous exclamations, uttered impulsively, and so closely connected with the transaction as to exclude the idea that they were made with deliberation and purpose, are properly admitted as *res gestæ* evidence.

"As independent explanatory or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury." *Hatzakorzian v. Rucker-Fuller Desk Co.*, 197 Cal. 82, 41 A. L. R. 1027.

■ The question is raised whether the *res gestæ* statements of defendant's wife while using or demonstrating this new car can be received in evidence against him.

Courts have gone far along this line, for in an early

case it was held that even the remarks made by a bystander at an auction sale of negroes could be introduced as *res gastæ*. *Stovall v. Farmers & Merchants Bank,* 8 Smedes & Marshall (Miss.) 305, 47 Am. Dec. 85.

The statement of a truck driver immediately after striking a bicyclist, and while yet at the scene of the accident, that he was hurrying and did not see the boy until he was right on him, was held part of *res gestæ*. *State v. Trimble,* 315 Mo. 166. See *Armour & Co. v. Industrial Commission,* 78 Colo. 569.

The *res gestæ* declarations of an agent are clearly admissible against his principal if made while he is engaged in the business of the principal.

A suit brought by plaintiff's mother for injuries received by her in this same accident has already been passed upon by this court. Chief Justice Goss in that opinion, *Roh v. Opocensky,* 125 Neb. 551, set out all the details of the accident, and they will not be repeated here. He also set out this court's ideas in regard to the law of the case, and held that this same statement was admissible as a part of the *res gestæ*, the statement in his opinion reading as follows:

"Under the principles announced in *Ridenour v. Lewis,* 121 Neb. 823, and *Perry v. Johnson Fruit Co.,* 123 Neb. 558, what Mrs. Opocensky said on the occasion was admissible as a part of the *res gestæ*. In such a situation, spontaneous declarations by an agent constitute a part of the fact in the *res gestæ* and have whatever probative value the jury may give to them as against the principal. They constitute an exception to the rule as to hearsay evidence.

" 'Statements made as part of *res gestæ* are substantive evidence of matters stated.

" 'Driver's declaration that he knew he was driving fast, made while injured plaintiff was being removed from automobile struck by driver, *held* admissible as *res gestæ* against owner of automobile.' *Duncan v. Rhomberg,* 236 N. W. 638 (212 Ia. 389)."

The court's refusal to admit this evidence, which was proper *res gestæ*, is reversible error.

REVERSED AND REMANDED.

BEGLEY, District Judge, having died March 4, 1934, did not participate.