IDA ERICKSON, APPELLEE, V. EVERETT R. MORRISON,
APPELLANT.

40 N. W. 2d 413

Filed January 6, 1950.   No. 32596.

*Fitzgerald & Smith,* and *Robert L. Smith,* for appellant.

*Gross & Welch, Joseph J. Vinardi,* and *Harold W. Kauffman,* for appellee.

(133)

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for damages for personal injuries growing out of an automobile accident at a street intersection. The jury returned a verdict for plaintiff for $2,500 and the defendant appeals.

The evidence shows that on November 17, 1946, plaintiff was riding in her father's automobile on Forty-eighth Street in the city of Omaha immediately prior to the accident here involved. Her father was driving the car, her mother occupied the right side of the seat, and plaintiff sat between them. All three testify that they were proceeding south on Forty-eighth Street at a speed of 15 to 20 miles an hour. Plaintiff testifies that just as they were entering the intersection of Decatur and Forty-eighth Streets she saw defendant's car 30 or 40 feet east of the intersection, advancing at a speed of 40 miles an hour. She states that defendant did not slow down or change his direction prior to the impact. Plaintiff testifies that the collision occurred in the southwest quadrant of the intersection, west of the center of Forty-eighth Street, and two or three feet south of the center of Decatur Street. She testifies that her father turned his car to the southwest in an attempt to avoid the collision. The car in which plaintiff was riding, hereafter designated as the Erickson car, struck the defendant's car on the right side between the two doors. The front end of the Erickson car was badly damaged, the evidence being that the left front fender first struck defendant's car. After the impact the Erickson car came to a stop within five to ten feet. Following the collision defendant's car pursued a southwesterly course, climbed a bank on the south side of Decatur Street just outside of the intersection, and rolled back on its left side. The two cars were within six or eight feet of each other after the accident.

Plaintiff testifies that the accident occurred about 10:45 a. m. on a Sunday. She and her parents were on their way to church. Due to a detour they had not been able to travel the route with which they were familiar. They had become uncertain of the route they were taking and immediately prior to the accident they were endeavoring to orient themselves by looking for the street signs on the streets they were crossing. There is evidence in the record, also, that there were some bushes along the north side of Decatur Street which partially blocked the view, to the left of the intersection, of one approaching from the north on Forty-eighth Street. Plaintiff testifies also that immediately after the accident she went to defendant's car and talked to the defendant before he was able to get out of the car. She testifies that the defendant then said: " 'What hit me? I didn't see a thing.' "

Plaintiff's father, the driver of the car, testifies that he approached the intersection at a speed of 15 to 20 miles an hour with the intention of turning right on Decatur Street. He states that when he was in the intersection a distance of 15 feet he saw the defendant's car a short distance east of the intersection approaching at a speed of 50 miles an hour. He testifies that he looked both to the right and to the left before he entered the intersection and did not see defendant's car at that time. He states that as he was driving along he was looking for street markers in order to find the way to the church they had planned to attend. He testifies that he applied his brakes immediately on seeing the defendant's car and that he did not travel over four feet after the impact.

The defendant testifies that he was driving west on Decatur Street at a speed of 15 to 20 miles an hour; that as he approached Forty-eighth Street he looked both to the right and to the left and saw no vehicles approaching. He says he was driving in the center of the road and that he has no recollection of what happened after entering the intersection. He says, also, that he has no recol-

lection of the conversation testified to by the plaintiff. He testifies that the first thing he remembers after the accident is the trip to the hospital following the accident. His testimony is to the effect that he resided on Decatur Street; that he traveled Decatur Street regularly; and that he was familiar with the intersection where the accident occurred, including the bushes on the north side of Decatur Street.

The traveled portions of the intersecting streets were about 20 feet in width. Neither road was paved. They had been surfaced with gravel or similar material. The day was clear and the streets dry. The bushes involved were quite thick but had only a few dry leaves remaining. The Erickson car approached the intersection from defendant's right and was the favored car if the two cars approached the intersection at approximately the same time. That the evidence was sufficient to go to the jury on the question of defendant's negligence is not questioned by this appeal.

It is the contention of the defendant that the trial court erred in not instructing the jury, as requested, on the matter of the contributory negligence of the plaintiff in not warning her father, the driver of the car, of the partial obstruction of view to the left as one enters the intersection from the north. The fact that plaintiff was watching for street markers is also asserted as negligence on her part. We think the trial court was correct in not submitting to the jury the question of negligence on the part of plaintiff, based on the foregoing grounds. The record shows that the bushes along the north side of Decatur Street did partially block the view to the left as one approached this intersection. The danger, however, was just as apparent to her father as it was to her. The danger was not one which was unusual or unexpected. It was not such a danger that a guest in the exercise of ordinary care would be expected to warn the host driver of the imminence of danger. Ordinarily, a guest need not watch the road or advise the driver in the

management of the car. There is nothing in the record that would indicate to plaintiff that her father was an incompetent or careless driver. Under the circumstances here shown there was no question of contributory negligence for the jury in the respects claimed. Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178; Gleason v. Baack, 137 Neb. 272, 289 N. W. 349. We have stated the general rule as follows: "Ordinarily, the guest passenger in an automobile has a right to assume that the driver is a reasonably safe and careful driver; and the duty to warn him does not arise until some fact or situation out of the usual and ordinary is presented." Lewis v. Rapid Transit Lines, 126 Neb. 158, 252 N. W. 804. It is urged that it was negligence for plaintiff to look for street markers as the car in which she was riding as a guest approached the intersection. Watching for street markers by a guest is not negligence any more than watching for traffic control signs and signals. To say that a guest passenger in an automobile was guilty of contributory negligence because immediately prior to the accident she was watching for street markers would place too heavy a burden on a reasonably prudent person charged with the exercise of reasonable care under the circumstances. Watching for street markers is not an unusual occurrence; it is a usual and ordinary practice and does not constitute negligence on the part of a guest passenger.

It is urged by the defendant that the verdict was excessive. The record shows that plaintiff was 22 years of age at the time of the accident and was by occupation a trained nurse. She was then working in the Dodge County Community Hospital in Fremont, Nebraska, at a salary of $175 a month. At the time of the trial she was similarly employed by Immanuel Hospital in Omaha at a salary of $195 a month. There is evidence that she lost about three weeks work because of her injuries. She required the services of a physician in Fremont and another in Omaha when she became employed there. She testifies that she suffered a blow to the back of the

head, neck, and shoulders. The evidence is that she suffered from shock and bruises to the chest and other parts of the body. She testifies that since the accident, to the time of trial, she has suffered from severe headaches. One physician testifies that in his opinion the headaches are caused by a concussion of the brain and that their recurrence indicates an uncertain result in the future as to their successful treatment.

The fixing of damages in such a case is for the jury. Its judgment is to be sustained unless it is so exorbitant as to indicate passion, prejudice, mistake, or a complete disregard of the evidence and the law. We find no evidence that the jury did not fairly and impartially assess the amount of damages. In Thoren v. Myers, 151 Neb. 453, 37 N. W. 2d 725, we said: "In an action for damages, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the sound discretion of the jury, and the courts are reluctant to interfere with a verdict so rendered." The evidence is sufficient to sustain the amount found to be due and it is not, therefore, the province of this court to interfere with the verdict rendered.

Many other assignments of error have been set out. We have examined all of them and find them to be without merit.

AFFIRMED.