JOHN M. JOHNSON, APPELLEE, v. EARL R. SCHREPF ET AL., APPELLANTS, EASTERN NEBRASKA PUBLIC POWER DISTRICT, A CORPORATION, APPELLEE.

47 N. W. 2d 853

Filed May 11, 1951.   No. 32952.

*Betty Peterson Sharp*, and *Davis, Stubbs & Healey*, for appellants.

*Van Pelt, Marti & O'Gara*, and *Tyler & Frerichs*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a personal injury action growing out of an accident between two trucks on a public highway. The jury returned a verdict for the plaintiff in the amount of $16,594.85, and the defendants appeal.

The accident took place on a county road about four and one-half miles south and one mile east of Syracuse, Nebraska, on a detour marked as State Highway No. 50, on June 29, 1948, at approximately 4:15 p. m. The highway was graveled. Visibility was good. The traveled portion of the highway was about 18 feet in width at the places material to this case. There was a windrow of gravel along the west side of the highway about 2½ feet wide at the base and 1½ feet high. The road at the scene of the accident sloped downward toward a culvert at the foot of the hill. The incline was not great and it does not appear of importance in the case.

The plaintiff was an employee of the Eastern Nebraska Public Power District at the time of the accident. He was riding in a truck belonging to the district, which was being operated by Lawrence Walters, his foreman. Another employee, Vincent Maillard, sat to the right of the driver and plaintiff was sitting on the right of Maillard, next to the door on the right-hand side of the cab. The three men had completed some work for the district at Lewiston, Nebraska, and were proceeding to their homes in Syracuse.

The district's truck had a platform which was 9 feet

10 inches long and 6 feet 10 inches wide. This platform was equipped with a bolster which pivoted on a heavy pin, set vertically in the platform equidistant from the sides and somewhat back of its center. It was special equipment used in transporting poles. Before leaving Lewiston the three men loaded two timbers on the platform which were described as five by fives and were 10 feet 4 inches in length. The two timbers were wired together at each end, one above the other. They were placed in front of the bolster and wired to it. They were then placed in a diagonal position from the right front to the left rear corners of the platform and wired to the platform on each end. The only other equipment on the platform were some truck chains and log chains on the chain rack at the front of the platform, and some shovels. The evidence shows that the timbers did not extend beyond the rear edge of the platform over an inch, if at all.

It appears that after leaving Lewiston with the truck they came to a bridge located about two miles south of the point of the accident. They stopped before crossing the bridge to permit a combine to cross. While waiting, plaintiff got out of the truck and examined the two timbers and found them to be wired tightly to the bolster and platform. The truck owned by the defendant Schrepf and driven by the defendant Masters came up behind them and stopped, and followed the district's truck across the bridge after the combine had cleared it. The defendant Masters testifies that he saw plaintiff make the examination of the timbers. He says also that the timbers did not extend beyond the platform at this point.

The evidence is that after crossing the bridge the district's truck proceeded on its way north at a speed of 40 to 45 miles an hour. At the place of the accident the driver of the Schrepf truck undertook to pass the district's truck. The district's truck was on the right-hand side of the highway and was proceeding straight

down the road. When the front of the Schrepf truck came alongside the cab door of the district's truck there was a dull thud and the district's truck veered to the right and, after traveling some distance out of control, turned completely over and back up on its wheels. Defendant Masters also describes the noise of contact and the pulling of his truck towards the district truck. He says he pulled his steering wheel to the left and that his truck then appeared to unhook from the other truck. After going by he observed the district truck in the ditch. He went back and assisted the three occupants of the district truck.

The Schrepf truck was a comparatively new truck. The defendant Masters was an employee of the defendant Schrepf and was using the truck in his employer's business at the time of the accident. The defendant Masters testified that the district truck was traveling on its right-hand side of the highway at a speed of approximately 45 miles an hour immediately prior to the accident. He did not observe any timbers extending beyond the platform of the truck when he started to pass. There are marks, indentations, and scraped places on the back of the cab and front of the truck body of the Schrepf truck. When the district's truck came to rest after the accident the two timbers were not attached to the truck platform. One was found broken in two near the truck and the other was found in the ditch nearby. There were some red paint marks on the unbroken timber which resemble the red color of the Schrepf truck. It is claimed by plaintiff that the lower right front corner of the Schrepf truck body struck the district's truck. It is argued by defendants, largely from the circumstances shown, that one or both of the timbers came in contact with the Schrepf truck between the cab and body and caused the accident.

There is no evidence in the record that the timbers came loose before the accident. Plaintiff and Walters testified that they looked back at their load on several

occasions and that it was wired tightly in place at all times. Defendant Masters says that he saw nothing extending beyond the truck bed as he started to pass. The only evidence pointing in that direction is the evidence of the red paint marks on the unbroken timber. There is evidence of damage to the back of the cab and the front of the truck box on defendant's truck. The right front corner of the truck body of the Schrepf truck appears to have been struck a solid blow, a blow sufficient to split the end of the heavy baseboard of the truck box. All the persons involved testify to a contact between the two trucks. Whether the Schrepf truck struck the district's truck and caused the accident is clearly a question of fact to be determined from the evidence. Whether or not the damage to defendants' truck was caused by a loosened timber, and, if it was, whether the timber loosened before or after the collision of the trucks, presents a question for the jury to decide. The trial court was correct in refusing to direct a verdict for the defendants. We think there was sufficient evidence to sustain a verdict for the plaintiff. It is clear from the evidence that there was contact between the two trucks, which resulted in the injury of plaintiff. There is evidence that the lower right front corner of the truck box on the Schrepf truck struck or was struck a solid blow. If the damage to this part of the Schrepf truck was caused by its hitting the district truck and causing it to overturn, the jury could well find, after considering all the testimony and circumstances, that it was due to the negligence of the driver of the Schrepf truck. This the jury evidently did. The evidence is sufficient to support such finding. The rule is: Where the driver of a motor vehicle upon a public highway, in attempting to pass another vehicle from the rear, operates his vehicle in such a manner as to strike the other vehicle in passing, he is ordinarily guilty of negligence when the driver of the vehicle being passed is without fault. Blado v. Draper, 89 Neb. 787,

132 N. W. 410. The trial court correctly overruled the motion for a directed verdict and submitted the case to the jury. Where the defendant in a personal injury action moves for a directed verdict, such motion will be treated as an admission of the truth of all material and relevant evidence favorable to the plaintiff and of all reasonable inferences to be drawn therefrom, and if it tends to support plaintiff's cause of action, the motion should be overruled and the case submitted to the jury. Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499.

The defendants contend that the trial court erred in not submitting the question of plaintiff's contributory negligence to the jury. In this respect it must be noted that plaintiff was not the driver of the district truck. He was an employee working under the directions of a foreman. The evidence of the three men who loaded the timbers shows that the timbers were wired to the bolster and to the truck platform with heavy wire. The load was observed from time to time prior to the accident and each time it appeared to be in the same position in which it was first placed. At the bridge plaintiff examined and tested the condition of the load and found it as originally loaded and fastened. The defendant Masters observed the timbers on the truck at the bridge and he saw nothing indicating that the timbers were improperly fastened to the truck. When Masters started to pass the district truck he saw no timber protruding over the platform. There is no evidence of improper loading, or that the loosening of the timbers was the first of a chain of events which resulted in plaintiff's injury. It is only the fact that the timbers were not attached to the platform after the accident that affords the basis of defendants' contention that the loosening of the timbers was the cause of the accident. This does not necessarily follow. The loosening of the timbers could well have been a result, rather than a cause, of the collision. In any event, the plaintiff is not

shown to have been negligent in anything that he did. Defendants contend he was negligent in not properly loading the two timbers. The loading was supervised by the foreman. The method of loading and fastening the timbers to the truck platform is meticulously described in the record. It is not pointed out wherein the plaintiff failed to use ordinary care in this respect. We think there is no evidence of negligence on the part of the plaintiff which would require the submission of the issue of contributory negligence to the jury. Hendrix v. Vana, 153 Neb. 531, 45 N. W. 2d 429; Costello v. Hild, 152 Neb. 1, 40 N. W. 2d 228.

Defendants contend it was error to submit the question as to whether excessive speed caused the accident. The instruction stated in effect that it is the law of this state that no person shall operate a motor vehicle at a rate of speed greater than is reasonably safe and proper, having regard for the traffic and the use of the highway, and the condition of the highway. The evidence shows that the highway had been freshly graveled and that a windrow of gravel remained along the west side of the road. The road was about 18 feet wide and the width of each truck was approximately 7 feet. Defendants' truck was necessarily being driven in excess of 45 miles an hour. The speed at which defendants' truck was being driven was pleaded as negligence. We think, under the evidence and circumstances here shown, that there was no error prejudicial to the defendants in the giving of the instruction in the form in which it was given. The speed at which the trucks were being driven is a factor in determining who was negligent. There is nothing in the instruction which prejudicially affects the respective rights of the parties. Whether the speed of the defendants' truck was excessive and negligent is a question of fact. The instruction does not submit an issue upon which there is no evidence. The fact that there is no evidence that defendants' truck exceeded statutory speed limits is not controlling on

the issue of excessive speed where conditions exist which in the exercise of reasonable care require that a motor vehicle be driven at a lesser speed. Novak v. Laptad, 152 Neb. 87, 40 N. W. 2d 331; Tews v. Bamrick, *supra*. Consequently, there was no prejudicial error in the giving of the instruction.

Defendants contend that the verdict is excessive. The evidence shows that plaintiff was 42 years of age at the time of the accident. He suffered a comminuted compression fracture of the twelfth dorsal vertebra and a fracture of the ninth rib on the right side. He was unconscious immediately following the accident and suffered from shock for a time thereafter. Plaintiff was taken to a hospital where he was immobilized with his back elevated and his head and feet lowered. He was kept in this position for 14 days, at the conclusion of which he was placed in a body cast extending from the hips to the armpits. The cast was changed three times during the five months he was required to wear it. For seven months thereafter he was required to wear a back brace which fitted around the pelvis and was fitted with arm crutches and a back support. He lost weight and suffered from headaches. He returned to work on March 28, 1949, and has been able to perform light work only. It is estimated by the physician who cared for him that he has sustained a 50 percent total permanent disability to his back. The physician further testified that plaintiff will never be able to do heavy lifting or work requiring that he bend over. At the time of his injury plaintiff was earning $137.50 a month. When he returned to work after the accident the rate of pay of his position had been increased to $160 a month. His life expectancy is about 28 years and his injuries are permanent. He has suffered great pain and will suffer discomfort for an indefinite period, possibly for the remainder of his life. No yardstick has been evolved for accurately determining the measurement of the damages in such cases. The fixing of the damages is the

function of the jury and unless it can be shown to be so exorbitant as to indicate passion, prejudice, mistake, or a complete disregard of the law and the evidence, its judgment will be sustained. Thoren v. Myers, 151 Neb. 453, 37 N. W. 2d 725; Jones v. Chicago G. W. R. R. Co., 97 Neb. 306, 149 N. W. 813. We cannot say that the evidence is not sufficient to sustain the verdict rendered. Economic conditions, including the low purchasing power of money for the necessities of life, is a factor in determining the amount of a verdict. Dailey v. Sovereign Camp, W. O. W., 106 Neb. 767, 184 N. W. 920. The period of inflation now existing is a factor which the jury could consider in arriving at the amount of the verdict. We must assume that the jury gave consideration to this fact, as it had a right to do. We cannot say from this record that the jury failed in its duty in returning a verdict in the amount of $16,594.85 when all the factors entering into the problem are considered. A court should not substitute its judgment for that of the jury when the amount named by the jury is sustainable by factors of pain, suffering, mutilation, disability, wage losses, medical costs, or other pecuniary losses, including those resulting from existing economic conditions such as the low purchasing power of money. We think the verdict is sustained by the evidence.

We have examined the remaining assignments of error and find them to be without merit. The judgment of the district court is therefore affirmed.

AFFIRMED.