JOHN B. PEACOCK, APPELLEE, V. J. L. BRANDEIS & SONS, A
CORPORATION, APPELLANT.

60 N. W. 2d 643

Filed October 23, 1953. No. 33324.

*Kennedy, Holland, DeLacy & Svoboda,* for appellant.

*Gross, Welch, Vinardi & Kauffman,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,.
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for damages by John B. Peacock,.
plaintiff and appellee, against J. L. Brandeis & Sons, a
corporation, defendant and appellant. The action is.
predicated upon a charge of negligence of an employee
of defendant but attributable to it.

The case was tried to a jury and a verdict was returned in favor of the plaintiff for $17,500. Judgment was entered on the verdict. A motion for new trial was filed and in due course overruled. From the judgment and the order overruling the motion for new trial the defendant has appealed.

The substantial facts upon which the action is based are that on December 9, 1949, the plaintiff who was and still is in charge of the interior decorating department of Orchard & Wilhelm Company, with another employee of that company, was proceeding in an automobile belonging to Orchard & Wilhelm Company eastward on Dodge Street on the right-hand side thereof in the city of Omaha, Nebraska. When he arrived at Forty-sixth Street the traffic control light was against him. He thereupon stopped the automobile which he was operating. While he was stopped, an automobile described as a pick-up truck belonging to the defendant and operated by one of its employees collided with the rear of the automobile operated by plaintiff.

As to the facts as thus stated there is no dispute. Also there is no contention that plaintiff was guilty of any act which would charge him with any negligent responsibility for the collision. Further it is conceded that the driver of the defendant's automobile was at the time engaged in the business of the defendant.

One of the defenses pleaded by the defendant is that the collision was an unavoidable accident and because thereof the defendant was not guilty of negligence.

In the brief of defendant there are in number seven assignments of error. In substance there are but three. The three are: (1) The court erred in refusing to properly submit the defense of unavoidable accident, (2) the court erred in the admission of testimony as to a statement purported to have been made by the driver of defendant's automobile immediately after the collision, and (3) that the verdict is excessive.

The substance of the claimed error as to the first of

these assignments is that the court refused to give instructions 17 and 18 tendered, as follows:

No. 17. "You are instructed that if you find that the accident in question was the result of an unavoidable accident, then your verdict should be for the defendant and by the term unavoidable accident is meant an accident which happens without fault on the part of the parties involved."

No. 18. "You are instructed that an accident which happens without fault of either party is what is known in law as unavoidable accident. Where injury resulting from such an accident, the law leaves the parties where they are, and allows neither to recover against the other."

It is observable that these two tendered instructions are abstract in that they make no reference to the factual situation under consideration. There is nothing clearly definitive except the following at the end of No. 17: "* * * an accident which happens without fault on the part of the parties involved."

The trial court with particular reference to the only facts which the defendant contends caused this collision to be an unavoidable accident, in two instructions, told the jury what it was required to find in order to absolve the defendant from liability on the ground that the collision was within the meaning of law an unavoidable accident. It is true that the instructions do not use or define the term, but they do, and correctly, describe for the purposes of this case unavoidable accident and the rights to which the defendant would have been entitled had the jury found under the facts that this was an unavoidable accident.

The pertinent statements contained in the two instructions are as follows:

No. 5. "* * * On the other hand, if you find that a person exercising ordinary care could not reasonably have anticipated from all the facts and circumstances the presence of ice and of a slippery condition at the place where defendant's driver attempted to stop, and

that defendant's driver was driving at such time at what would have been a reasonable speed if such slippery condition did not exist at the place of the accident, and you further find that defendant's driver could reasonably have stopped his car in time but for such slippery condition of the street at the place of the accident, then you cannot find defendant negligent in respect to his speed or in failure to have his car under proper control."

No. 7. "The fact that an accident occurred or the fact that the plaintiff may have sustained damages, if such fact you find, either or both, taken alone without other evidence, facts and circumstances, is no evidence of negligence. When accidents happen as incidents to reasonable use and reasonable care, the law affords no redress. If any injuries of the plaintiff were not caused by negligence of the defendant's driver, plaintiff would not be entitled to recover for such."

Clearly the instructions given by the court were not less complete and comprehensive on the subject of unavoidable accident than those tendered by the defendant.

It is a well-established rule that it is not error to refuse a requested instruction if the substance of the requested instruction is covered by instructions given. Johnson v. Union P. R. R. Co., 111 Neb. 196, 196 N. W. 140; Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N. W. 712; Parks v. Metz, 140 Neb. 235, 299 N. W. 643; Spaulding v. Howard, 148 Neb. 496, 27 N. W. 2d 832; Johnson v. Griepenstroh, 150 Neb. 126, 33 N. W. 2d 549.

It must be said therefore that there was no error in the refusal of the trial court to give the two instructions requested by the defendant.

On the trial of the case the trial court permitted the plaintiff, over objections, to give testimony that the driver of defendant's automobile said to him: "I guess I was going too fast." The material part of the objection was that the statement was not a part of the res gestae and that it was, as to the defendant, hearsay.

This related to a time immediately following the collision. The collision caused the automobile operated by plaintiff to be moved forward a very short distance, a matter of, according to estimates, from 10 to 35 feet, where it was stopped. Plaintiff remained in the automobile momentarily to inquire into the condition of a lady riding with him, when he got out. Defendant's driver brought the other automobile to a stop immediately and got out. The two came together at once in the street and plaintiff testified it was at the time they came together that the statement was made.

Whether or not evidence of this statement was admissible depends upon whether or not it was a part of the res gestae or, in other words, spontaneous and so related to the accident as to be regarded as a part of it. Roh v. Opocensky, 125 Neb. 551, 251 N. W. 102; Roh v. Opocensky, 126 Neb. 518, 253 N. W. 680.

Whether or not a statement is in fact spontaneous and a part of an incident or occurrence is often if not usually a matter which is difficult to determine and is incapable of determination agreeable to any hard and fast rule, but must depend for the most part upon the peculiar facts of each instance. Ordinarily the determination must depend upon the application of reason to the facts and circumstances disclosed in the particular instance. However, some aid may come from parallel incidents which have been presented in earlier cases.

A very nearly parallel situation was presented to this court in the two cases of Roh v. Opocensky, *supra*. In the opinions in those cases this court said that the testimony was admissible.

The application of reason in this instance and the precedent cited leads to the conclusion that the court did not err in the admission of the testimony in question under this assignment.

The remaining question is that of whether or not the verdict is excessive or so excessive as to require a reversal and the granting of a new trial or a remittitur.

As indicated the defendant seeks a new trial on the ground that the verdict is so excessive as to indicate that it was rendered under the influence of passion and prejudice.

In the event however that it shall not be found that the verdict was rendered under the influence of passion and prejudice but that it is excessive the defendant seeks at the hands of this court a remittitur of the portion found to be excessive.

It is a well-established principle of law that where a verdict in a personal injury case is excessive and that it appears to have been returned under the influence of passion and prejudice rather than upon the facts or that the jury misapplied the law, it is the duty of this court to set the verdict aside and grant a new trial. Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451; Horky v. Schroll, 148 Neb. 96, 26 N. W. 2d 396; Rueger .v. Hawks, 150 Neb. 834, 36 N. W. 2d 236; Thoren v. Myers, 151 Neb. 453, 37 N. W. 2d 725; Erickson v. Morrison, 152 Neb. 133, 40 N. W. 2d 413; Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186; Johnson v. Schrepf, 154 Neb. 317, 47 N. W. 2d 853.

There is precedent in the decisions of this court which hold that in unliquidated damage cases where the amount of the recovery is incapable of ascertainment except by trial and where on appeal the recovery appears to be excessive this court may disturb the verdict of the jury and order a remittitur of the portion found to be excessive. One such precedent is Pearse v. Loup River Public Power Dist., 137 Neb. 611, 290 N. W. 474.

The holding of the majority in that case was challenged by a dissenting opinion. In the dissent the following appears: "It has long been the rule in this state that, where a verdict of a jury is clearly against the weight and reasonableness of the evidence, it will be set aside and a new trial granted. * * * I agree that, where the jury has made an error the extent of which the court can with some certainty ascertain, a remittitur is a proper

remedy.  * * * But if there is no method by which the court can rationally ascertain the extent of the excess, a remittitur cannot be required.  * * * Under such circumstances a remittitur is nothing more than a substitution of the judgment of the court for that of the jury."

The principle contained in this pronouncement has been adopted in later decisions of this court and has been followed consistently at least since 1943.   Van Auker v. Steckley's Hybrid Seed Corn Co., *supra;* Horky v. Schroll, *supra;* Rueger v. Hawks, *supra;* Thoren v. Myers, *supra;* Erickson v. Morrison, *supra;* Remmenga v. Selk, *supra;* Johnson v. Schrepf, *supra.*

It is believed that the principles thus announced and followed are sound and that there should be no departure from them.   It follows therefore that no further consideration will be given herein to the alternative request of the defendant for a remittitur.   Attention will be given only to the contention that the verdict and judgment should be vacated on the ground that the verdict appears to be the result of passion and prejudice.

It must be concluded on the record that there was sufficient evidence from which the jury could find that plaintiff was injured as a result of this collision.   On the trial of the case he testified as to how the collision occurred, as to the immediate consequences to him, and as to the later progress of these consequences.

An orthopedic surgeon called on his behalf testified that he received from plaintiff the history of the accident and its consequences, which reflected that to which plaintiff had testified in these respects, and made examinations of the plaintiff.   He testified that in his opinion plaintiff was injured in the collision.

An orthopedic surgeon was also called on behalf of the defendant.   He testified that he made an examination of plaintiff on behalf of defendant.   He took a history from plaintiff, which he related, which history varied in no substantial particular from the history as testified to

by plaintiff and his witness. This witness gave it as his opinion, based upon the history, that plaintiff had been injured as a result of the collision.

The determination of whether or not it may be said that the verdict was the result of passion and prejudice must depend in this case upon whether or not it is so disproportionate to the injury and damage as disclosed by the evidence as to indicate that the jury disregarded the evidence and based its verdict on other considerations.

In order to arrive at a conclusion in this connection it becomes necessary to review the pertinent evidence relating to injury and damage.

The plaintiff gave testimony that he suffered pain in the region of the lower end of his spine immediately following the accident. The pain persisted until December 21, 1949, when he called upon a doctor. This doctor was not called to testify. The evidence discloses however that this doctor sent the plaintiff to the orthopedic surgeon who testified on behalf of the defendant, who took X-ray pictures of the area of injury. The pain persisted but plaintiff did nothing further about it until June 1950, when he called upon Dr. Herman Johnson who took a history and made an examination including the taking of X-ray pictures. Dr. Johnson advised the procurement of a brace to hold the area involved in rigidity and physio-therapy treatments. Over the period thereafter plaintiff received 91 treatments and procured a brace which he wore constantly thereafter in the daytime except on a few brief occasions and on occasion at night. He was advised to and did thereafter sleep on a hard bed. Plaintiff obtained relief from use of the brace but observed no improvement in his condition. The condition persisted and plaintiff saw Dr. Johnson next in April 1951, and also in March 1952. Throughout all of this time he experienced no improvement in his condition. He was an outdoor man and engaged in hunting, sports, and athletic activities. His occupation and his other activities entailed a large amount of travel. These

activities were not curtailed appreciably in quantity after the accident but his ability to perform attendant details of these activities was substantially reduced. His ability to bend his body from the upright position was progressively reduced. He lost no time from his occupation as a result of the injury but was unable to perform as diligently as before. He suffered no loss of income as a result of the injury.

Dr. Johnson gave testimony that he examined plaintiff on June 13, 1950, and received a history of the accident and a complaint of pain from that accident which had been aggravated on a recent fishing trip and from riding in a car; and that there was no pain radiating into the lower limbs. Inspection by palpation disclosed a straight spine with moderate fixation. On forward bending the finger tips could be carried to within 6 inches of the floor. Backward bending was three-fourths of normal. In these extreme positions there was pain in the lower part of the spine. Side bending was free and painless. The lower lumbar muscles were hard and tender.

After the taking of X-rays a low back brace and treatments in the form of heat and massage were recommended. It was thought at that time that to a certain extent this would bring about eventual recovery. The prescribed brace was fitted July 29, 1950.

The plaintiff was seen next on April 18, 1951, at which time there was a definite increase in stiffness in the back. In bending forward he was able to get his finger tips only to his knees. His side bending was estimated to be a third of normal. He at that time complained of pain.

The plaintiff was next seen February 15, 1952, at which time plaintiff was suffering low back pain and had developed some tingling and numbness over the left thigh. It was the doctor's opinion that this tingling and numbness was due to irritation of nerves as they came out of the spinal canal in the lower lumbar region. Plaintiff

returned for X-ray examination of his spine on March 11, 1952. At this time plaintiff's range of motion was one-fourth of normal. He could bring his finger tips to a point about three inches above the knees. Side motion was one-fourth of normal. The brace was removed during all examinations.

X-ray pictures were taken on the occasion of most of the examinations, all of which were exhibited to the jury and analyzed by the witness. Following the analysis and exhibition of the pictures the witness gave it as his opinion that there was a congenital abnormal shape of the joint between the fourth and fifth lumbar vertebrae. There was a narrowing of the disc between the fifth lumbar vertebra and the sacrum which continued to narrow further between the time the first pictures were taken and the last. The opinion given as to whether or not the condition of the back of plaintiff resulted from the accident and that injury was the following: "It is my opinion that a certain amount of it has, yes."

Reasonably explanatory of this answer, it is thought, is the following from the cross-examination: "Q- You thought it was a muscle strain at that time? A- Or ligamentous strain. Q- And increased because of this poor architecture of the spine to start with? A- That is right."

The two excerpts of testimony taken together appear to mean it was the opinion of the witness that the condition of plaintiff's back resulted from the accident and injury except to the extent that it was contributed to by the faulty congenital architecture between the fourth and fifth lumbar vertebrae.

The further testimony of this witness was that in the first instance it was thought that the brace would at least in part bring about a recovery. It did not do so. A major operation to bring rigidity between the fifth lumbar vertebra and the sacrum was considered and discussed. Usually such operations are satisfactory for the purpose but not certainly so. The operation would

entail ordinarily a surgeon's fee of $500, 2 weeks hospitalization, a period of 6 to 8 weeks convalescence at home, and the use of a protective brace or belt for a period of several months. No such surgery has been performed or attempted.

The plaintiff was 54 years old at the time of the accident with an expectancy of more than 18 years. His yearly average income from his occupation from 1948 forward was well above the amount of the verdict in this case.

As against this evidence of the plaintiff, Dr. James W. Martin gave testimony. This is the orthopedic surgeon hereinbefore referred to as having made an examination and who testified on behalf of the defendant. He was the only witness who gave any testimony on the subject of injury on behalf of the defendant. In his examination he took X-ray pictures of the plaintiff. These pictures and others hereinbefore referred to as having been taken by him were introduced in evidence. On the witness stand he examined all of these and also all of those placed in evidence by the plaintiff.

With the history which he received, the examination which he made, and his examination of all X-ray pictures as a basis, the witness testified that he found a congenital variation from normal structure; that he found no evidence of injury disclosed by X-rays; that plaintiff may have sustained a muscle and ligament strain of the low back region on December 9, 1949; that he found slight sensory changes in the lower left extremity suggestive of mild irritation involving the left fourth lumbar nerve root; that the clinical findings were far from conclusive as to the existence of disc prolapse or herniation; that the symptoms did not warrant radical treatment; that the plaintiff would do well to gradually discard the use of the brace; that he did not see any actual physical need for continuing to wear the support; that he saw no need for a fusion operation; and that discarding the brace

would cause the muscles to return to their normal work and get strong again.

The foregoing is a summary of the evidence pertinent to the matter under inquiry. No effort has been made to quote what was said, except in the instances so indicated. The effort has been to correctly reflect in summary the testimony of the witnesses. It is thought this result has been accomplished.

It becomes apparent that the verdict of the jury responded to the evidence of the plaintiff and to the inferences and conclusions to be drawn therefrom, rather than to those of the defendant. In doing this the jury was in the exercise of its proper function. It was the sole judge of the credibility of the witnesses as to the question of injury and damage as well as to every other question.

As is pointed out in the cases already cited herein the question of the amount of damage is one solely for the jury and its action in that respect may not be disturbed on appeal except for reasons which also appear in the cases already cited herein.

In arriving at the amount of plaintiff's damage the jury was required to take into consideration, as instructed, the character of the injury, pain, suffering, and loss already sustained, the reasonable value of medical care entailed or required up to the time of the trial, and also what in these respects would be entailed or required in the future as a consequence of the accident and injury.

Of course there is no monetary measure for pain and suffering but it is recognized that damages are allowable for them. No citation is necessary to support this assertion. If a jury has considered the duration and severity of pain and suffering and has manifested by verdict a reasonable attitude thereto in fixing damages the verdict will be upheld on appeal.

The jury had the right to find that the evidence of plaintiff in respect to pain and suffering was true. It also had the right to find that the same situation would

continue unless and until the back condition was corrected by a major operation, which operation if successful would correct the condition but would leave plaintiff with rigidity between the fifth lumbar vertebra and the sacrum. The possible or probable effect of such rigidity was not carefully described. Likewise the possible or probable effect of an unsuccessful operation was not described.

The medical and surgical expenses up to the time of trial appear to have been somewhere near $500.

The prospective operation would entail in probability surgery, $500; hospitalization, 2 weeks; recuperation or convalescent period at home, 6 to 8 weeks; and use of the brace for several months.

From this and what is disclosed in the record about plaintiff's compensation, if plaintiff was deprived of pay by his employer for the time lost, the total cost of surgery and hospitalization plus the deprivation of income would approximate one-third of the amount of the verdict. The verdict in its entirety was well below the annual earnings of the plaintiff.

These things appear in or are illustrations demonstrable from the evidence. They are based on facts as disclosed by the evidence subject to consideration by the jury in arriving at its verdict.

Taking into consideration all of the evidence and the inferences which a jury might reasonably draw from it, we are unable to say that the verdict is excessive.

The judgment of the district court is affirmed.

AFFIRMED.