## CAPILLON v. LENGSFIELD.*

### No. 16443.

Court of Appeal of Louisiana. Orleans.

Dec. 14, 1936.

*Rehearing denied Jan. 11, 1937. Writ of certiorari refused March 1, 1937.

Eraste Vidrine and James G. Schillin, both of New Orleans, for appellant.

Edward S. Spiro, of New Orleans, for appellee.

McCALEB, Judge.

On September 18, 1934, at about 7:30 a.m., the plaintiff, a colored man named Bernard Capillon, was driving his Franklin automobile on Jefferson avenue in the direction of the Mississippi river. He alleges that as he approached the intersection of Jefferson avenue and St. Charles avenue, the traffic semaphore stationed at said intersection was green and that under the traffic ordinance of the city of New Orleans he was entitled to proceed across St. Charles avenue; that he thereupon crossed the lake side roadway of St. Charles avenue, and the neutral ground of St. Charles avenue and after arriving at a point approximately in the center portion of the river side roadway of St. Charles avenue, his automobile was struck with violent force by the automobile of the defendant, H. W. Lengsfield, which had proceeded down St. Charles avenue in the direction of Canal street, and had attempted to cross the intersection of St. Charles avenue and Jefferson avenue on a red traffic signal light in violation of the city ordinance. Plaintiff further alleges that, as a consequence of the impact, his car was thrown out of control and proceeded on into the uptown river side roadway of Jefferson avenue past the intersection of St. Charles and Jefferson avenues, where it overturned.

He avers that he sustained grievous injuries, as a result of the collision, consisting of the loss of his left index finger, the loss of part of his left thumb and second finger, a severe nervous shock, contusions and bruises and a sprain of his right hip; that immediately after the accident he was taken to Charity Hospital where emergency treatments were performed and he was confined to said institution for a period of a day and a night; that later, on September 25, 1934, he returned to the hospital for further treatments and it was then discovered that his injured left hand had become infected and he thereafter placed himself under the care of his own physician who treated him for a period of three months. He further charges that his automobile was completely demolished in the crash and that he is entitled to recover the value thereof, which he fixes at $700. He also prays for the recovery of the sum of $3,000 for his physical injuries, $3,000 for his pain and suffering, $220 medical bills, and $20 for medicine purchased by him, or a total claim of $6,940.

The defendant answered and denied the averments of the petition respecting the negligence charged against him. He alleges that on the date of the accident he was proceeding down St. Charles avenue; that upon reaching the intersection of Jefferson avenue he brought his car to a complete stop on the right-hand side of the river side roadway of St. Charles avenue in obedience to the traffic semaphore which was red; that he remained stationary until the traffic semaphore changed to green (signifying his right to cross the intersection of Jefferson avenue), whereupon he shifted the gear of his automobile into first speed and proceeded into the center of the intersection where he was struck by plaintiff's car which was traversing the intersection in the direction of the river at a high rate of speed against the traffic signal and in direct violation of the city ordinance. He further pleads in the alternative that if the court should find him negligent in any particular then in that event the plaintiff was guilty of contributory negligence which proximately caused the accident and the resulting damage. He further reconvenes for the sum of $48.60 which he represents to be the damage to his automobile resulting from the collision.

On the foregoing issues, the case was tried and the district judge, after hearing the evidence, found for the plaintiff in the

full sum of $4,040 and assigned written reasons for judgment. The lower court did not pass upon the reconventional demand but its failure in this respect is tantamount to a rejection of the claim. From the adverse judgment, defendant has appealed.

The complaint here is that the district judge erred, first, in finding the defendant guilty of fault and, second, in failing to hold that plaintiff was contributorily negligent. We shall discuss the alleged errors in their respective orders.

The evidence of the defendant himself shows that on the morning of the accident he was driving on St. Charles avenue in the river side roadway headed in the direction of Canal street; that as he approached the intersection of Jefferson avenue the traffic proceeding on St. Charles avenue was stopped for a red semaphore light which gave the right of way to the traffic proceeding in Jefferson avenue across St. Charles avenue. There was a Tulane Belt street car proceeding down St. Charles avenue which had stopped for this adverse traffic signal and there were at least one or more automobiles in the riverside roadway at the intersection waiting on the red light.

The river side roadway of St. Charles avenue is sufficiently wide for three automobiles to proceed abreast thereon. The traffic lane of said roadway nearest the neutral ground at the intersection of Jefferson avenue was occupied, at the time of the accident, by at least one automobile waiting on the adverse traffic signal and there was also one or more automobiles stopped in the middle or second traffic lane.

The defendant says that he pulled into the third traffic lane from the neutral ground and remained stationary until the signal light changed to green. He explains, and his testimony is borne out by other uncontradicted evidence, that when the signal light facing traffic proceeding in the direction of Canal street on St. Charles avenue at the intersection of Jefferson avenue changes from red to green, it does so without the intervention of the usual yellow caution light which is exhibited by most of the semaphores in the city of New Orleans. He further relates that when the signal light changed from red to green on the morning in question (entitling him to proceed) he placed the gear of his automobile in first speed and started to cross the intersection. He concedes that, at the time he started to cross, his view of Jefferson avenue traffic was obstructed by the presence of the automobiles and street car to his left and he claims that he started his car forward in order to obtain a better sight. When he had proceeded a distance of some seven feet into the intersection, the front left-hand side of his automobile collided with the plaintiff's car. He asserts that plaintiff's car was traveling at a high rate of speed.

The district judge was of the opinion that the defendant's own statement sufficiently exhibits that he did not exercise the proper care under the circumstances existing at the time of the accident. We agree with the court's finding on this point. It seems evident that the defendant started his automobile immediately after the signal light changed from red to green. At that time, his view of traffic proceeding across St. Charles avenue from the lake side to the river side was screened by the automobiles and street car which were adjacent to him on his left. The defendant frankly admits that he could not see and that he pulled out into the intersection to get a better view. In so doing, he placed himself directly in the path of the plaintiff's car. Even though the defendant was entitled to cross the intersection when the signal light changed to green, he did not have a right to proceed ahead of traffic already rightly in the intersection and he was not justified in assuming that the intersection was clear. On the contrary, the fact that the traffic to his left had not started forward at the time the light changed from red to green should have warned him that there were vehicles proceeding in the intersection which had not completely traversed the roadway.

The case of Thomas v. Roberts (La. App.) 144 So. 70 is strikingly similar to the case at bar with respect to the negligence of the defendant in this case. The only difference between that case and this one is that the defendant there was proceeding on Louisiana avenue across the intersection of St. Charles avenue against a red signal light while the plaintiff was proceeding on St. Charles avenue, having the right of way by virtue of a green signal light. We found that the defendant was undoubtedly guilty of negligence in proceeding at an excessive speed across the intersection after the light had turned

red against him, but that nevertheless the plaintiff could not recover because had he looked, as he should have done, he would have seen the defendant's truck and that, even though the light was in his favor, he was guilty of negligence in failing to see the defendant coming across the intersection. In this case, the defendant says that he proceeded across the intersection but that he could not see to the left because of the presence of the traffic adjacent to him. Reasonable prudence and care required that he tarry until he was in a position to see whether the roadway was clear and this is so, especially, in view of the fact that the traffic, adjacent to him and proceeding in the same direction, had not moved forward but was ostensibly waiting until the roadway was clear of traffic.

Being of the opinion that the defendant is guilty of fault, we next consider whether or not the plaintiff was contributorily negligent. Discussion of the veracity of the statements of the plaintiff and his witnesses, who have testified that he entered the intersection on a green or favorable signal light, is consonant to obtain the correct solution of the question.

Plaintiff's first witness, Fred Stock, testified that he was a passenger on the St. Charles street car which was proceeding up St. Charles avenue in the direction of Carrollton avenue; that when this street car arrived at the intersection of St. Charles and Jefferson avenues, it stopped for the red traffic signal, and, at that time, he saw the defendant attempt to cross the intersection on the red light and strike the plaintiff's car which was proceeding from out Jefferson avenue across the intersection on a green light. When questioned regarding the position of the semaphore lights at the intersection, he was unable to say definitely where they are located. This witness further related that, while he was not acquainted with either the plaintiff or the defendant, he went to the Ninth precinct station shortly after the accident and obtained the plaintiff's address. He further says that he did not at any time discuss the facts of the case with any of the witnesses, yet we find that the plaintiff summoned him from the premises, 7829 Hickory street, which is the same address at which another one of plaintiff's main witnesses, Earl Geiling, resides. His testimony, on the whole, is far from impressive, and we opine that he did not see nearly as much as he would have us believe.

Earl Geiling, plaintiff's next witness, testified that he was driving a small Whippet automobile on the river side roadway of St. Charles avenue in the direction of Canal street; that automobiles occupying the first and second traffic lanes on St. Charles avenue stopped at the intersection of Jefferson avenue and were waiting for the signal light to change from red to green; that he also stopped his car to wait for the permissible signal, in the second or center lane of the roadway in the rear of the car preceding him; that as he was in this stationary position and while the semaphore was still against the traffic proceeding down St. Charles avenue, the defendant's car sped past to the right of his car; that it continued into the intersection and struck the plaintiff's car, which was advancing on a favorable light across St. Charles avenue. This witness' testimony is, to say the least, confusing and it is doubtful that he saw all the things he says he observed. If believed, if would destroy the testimony of the defendant and also that of defendant's witness, Mr. Charles Hinrichs. (Mr. Hinrichs is positive that the defendant had stopped for the red light at the intersection and that he did not proceed forward until the light had changed to green.)

Plaintiff's next witness, Robert Dorsey, a colored man, related that he happened to be a bystander on the uptown river corner of the intersection of St. Charles and Jefferson avenues and that he saw the accident while waiting for the signal light to change from red to green. He says that he remained stationary at the corner because he always stops for a red light and that this red light deterred him from crossing over the intersection. He affirms that the plaintiff's automobile crossed the intersection on a green light. It is indeed a strange coincidence that Dorsey, who admits that he was a very close friend of the plaintiff, just chanced to be present, on foot, at the very corner where the accident occurred and at the time it happened. Moreover, although the witness is positive that the original light was green and favorable to plaintiff, he, like some of the other witnesses produced by the plaintiff, is unable to say where the semaphores are

situated at the intersection. Our reaction is that Dorsey was exceedingly ambitious, and was anxious to assist the plaintiff's cause in any way possible.

Plaintiff's other witness to the accident was Daisy Green, a passenger in his car, who was injured in the crash. She is positive that the plaintiff entered the intersection on a green light. She first noticed that the light was green just as the plaintiff's car reached the intersection of St. Charles and Jefferson avenues and she relates:

"I said we were at the corner as near as I remember, right at the corner, just before we crossed, because I paid attention to it that that was the time to cross, and that is where I said, 'You have got the green light' and that is where he went on over."

She says that plaintiff did not slow his speed down to cross the intersection but went over at the same rate as he was traveling in Jefferson avenue (which is admitted by him to be 20 miles per hour).

The plaintiff testifies that he noticed the green signal light facing him at the intersection about 20 feet from the corner of Jefferson and St. Charles avenues. Why he did not notice it before that time, although his vision was unimpaired, is not explained in his testimony.

■ The district judge, who saw and heard the plaintiff testify, tells us, in his written reasons for judgment, that the plaintiff is a truthful colored man. We are always disposed to accept the views of the trial court concerning the credibility of witnesses, but in the instant case we are compelled to express our regret in being unable to coincide with the finding of our brother below, inasmuch as the transcript discloses that the plaintiff has falsified in at least one important particular.

■ The particular to which we refer is that portion of the plaintiff's testimony concerning the value of his Franklin car, which he asserts was demolished as a result of the collision. In his petition, plaintiff says that this car is worth $700. On the witness stand, he testifies that he purchased the automobile (which was a 1926 model Franklin) during the month of March, 1934, for the sum of $300 cash. To substantiate his evidence (that the car was purchased for the sum

of $300), he produces an undated bill of sale purportedly signed by his vendor, a colored man named Milton Clark. But, in rebuttal of the plaintiff's testimony on this point, the defendant has offered in evidence two certified copies of affidavits filed by Milton Clark with the motor vehicle bureau of the state of Louisiana. One of these applications (made by Milton Clark at the time he acquired ownership of the car) exhibits that Clark bought this 1926 model Franklin from the New Orleans Franklin Company on September 23, 1933, for the sum of $40. The other document, executed by Clark on March 14, 1934, is an application by him to transfer the license registration of this same car to the plaintiff and he states therein that he sold the car to the plaintiff for the sum of $35. Clark was not called as a witness and plaintiff's failure to summon him is not explained. Under these circumstances, we must presume that if plaintiff had produced the witness, he would have testified adversely to plaintiff's interest.

We do not believe, in view of the plaintiff's statement regarding the purchase price paid by him for the automobile, that he has testified to all of the truth and nothing but the truth in this case. Feeling as we do, we apply the legal maxim "Falsus in uno falsus in omnibus."

Moreover, plaintiff's contention that he entered the intersection on a green light is a myth which is completely destroyed by the physical facts of the case and by the testimony of the defendant's witness Fager.

It must be borne in mind that the evidence amply shows that the defendant attempted to cross the intersection on a favorable or green light, entitling him to proceed. We have found him guilty of fault, only because of his failure to deter his movements until such time as he was able to observe that the intersection was clear of adverse traffic.

Mr. Fager, who is the chief electrician for the city of New Orleans in charge of traffic semaphores, says that the signal light at this intersection changes from red to green without the intervention of an amber or caution light. But he also states that when the light is green, the amber or caution light is exhibited for a period of at least four seconds, before the green light is extinguished and the red light comes in view. He was unable to state definitely

the number of seconds the amber light remained on at this intersection at the time of the accident. However, he said that at the date of trial the amber light is in view for six seconds, and he swears positively that the amber lights on all semaphores in the city show for a period of not less than four seconds. He further states that St. Charles avenue is 90 feet in width at the intersection of Jefferson avenue.

Applying the foregoing physical facts to the case at bar, it is clearly demonstrated that, even if the plaintiff was traveling 20 miles per hour, he entered the intersection while the light facing him was green and amber, and he was thereby cautioned not to proceed. For at least a period of four seconds prior to the time the defendant entered the intersection on a green light, the plaintiff was cautioned by an amber light against going across from Jefferson avenue. At 20 miles per hour, the plaintiff was traveling at the rate of 32 feet per second, and in 4 seconds he would travel 128 feet, which is considerably farther than the distance from the entrance of the intersection to the point where the collision occurred.

On the whole, the evidence adduced in this case convinces us that the plaintiff was attempting to beat his way across the intersection on an amber light and took the chance that the traffic, which was stationary on St. Charles avenue, would let him proceed. By his foolhardiness, he has become the author of his own damage and, although the defendant was at fault, the proximate cause of the accident was his contributory negligence.

Furthermore, we are of the opinion that the plaintiff entered the intersection at a speed in excess of 20 miles per hour. This conclusion evinces itself in view of the fact that after the impact the defendant's car remained practically stationary, while the automobile of the plaintiff continued on into Jefferson avenue and overturned against a telephone pole some 60 feet from the place where the collision occurred.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment herein, dismissing the main demand of the plaintiff and the reconventional demand of the defendant. Plaintiff to pay all costs.

Reversed.