[Civ. No. 15756. Second Dist., Div. Three. Oct. 6, 1947.]

ELIZABETH CARLIN, Respondent, v. RALPH PRICKETT et al., Appellants.

Francis J. Gabel and Henry F. Walker for Respondent.

Forrest A. Betts for Appellants.

VALLEE, J. pro tem.—Appeal by defendants from a judgment for plaintiff entered upon a verdict of a jury in an action for damages for personal injuries. Defendants also appeal from an order denying their motion for a new trial. As an appeal does not lie from an order denying a motion for a new trial, the appeal from that order is dismissed. (*Reilly* v. *California Street Cable R. R. Co.,* 76 Cal.App.2d 620, 631 [173 P.2d 872].)

Respondent, driving her Chevrolet coupe, proceeded easterly on Third Street in Los Angeles toward its intersection with La Brea Avenue. Her daughter-in-law and a friend were in the car. It was her intention to turn left at this intersection and proceed northerly on La Brea. As she approached the intersection, she was in the center lane in order to make a left turn. There was no traffic immediately in front of her. The intersection of Third and La Brea was controlled by "Stop" and "Go" signals, which were in operation at the time. As respondent approached and entered the intersection, the signal was "Go," i. e., for east-west traffic on Third, and "Stop" for north-south traffic on La Brea. Two southbound vehicles were stopped in the western traffic lane on La Brea, at the north side of the intersection. There was no vehicle stopped in the center lane just west of and adjacent to the center line of La Brea and on the north side of the intersection. There was evidence, from which the jury could properly have concluded that as respondent's vehicle entered the intersection appellant Prickett drove defendants' truck southerly in this west center traffic lane, passing the

two stopped vehicles on their left, and went into the intersection against the "Stop" signal, striking respondent's car as she was negotiating her left turn. As a result of the collision, respondent was seriously injured.

Appellants urge three grounds for reversal: (1) That the court erred in instructing the jury that only the nine jurors who were in favor of a verdict for the plaintiff were entitled to participate in fixing the amount of the verdict. (2) That the court erred in giving the jury diametrically opposed instructions. (3) That the court erred in refusing to instruct the jury that a driver of a vehicle is entitled to rely on the protection afforded drivers on boulevards and arterial highways in his approach to, and entrance of, the intersection. No question is raised as to the sufficiency of the evidence to support the verdict.

After the jury had been deliberating for some time, they were brought into the courtroom. The attorney for appellants was absent. He had stipulated in writing that in his absence the court could bring the jury into the courtroom and reread to the jury any instruction previously given or give any new instruction. Upon the return of the jury to the courtroom, the following occurred: "THE COURT: Ladies and gentlemen of the jury, have you arrived at a verdict? FOREMAN PRATHER: We have arrived at a partial verdict, your Honor. We have found in favor of the plaintiffs, but we have not arrived at the sum to be assessed. THE COURT: Are you having some difficulty? FOREMAN PRATHER: In this way: there is a division of opinion on the general verdict, and those jurors that found for the defendant are contending that they should not vote on the matter of the damages. THE COURT: How do you stand as to the liability? What percentage? FOREMAN PRATHER: Nine to three. THE COURT: Nine to three. Where is Mr. Betts? THE CLERK: Mr. Betts is at his office. (Discussion at the bench between the Court and Mr. Gabel [attorney for respondent].) THE COURT: Well, the Court will instruct the jury that only the nine people who voted in favor of the plaintiffs can participate in fixing the amounts of the verdicts; and the three people who were for the defendants will not take part in the fixing of the amount. You may return to the jury room then." About thirty minutes later, the jury again returned to the courtroom and the following took place: "THE COURT: Ladies and

gentlemen, as I understood your query a while ago, there were three of you who voted for the defendants and who thought you should not participate in arriving at the amount of the award. Is that correct? FOREMAN PRATHER: I believe that is correct. THE COURT: Well, of course, the members of the jury, all of you, can participate at all stages in arriving at the verdict. Do those three members want to participate in fixing the award? FOREMAN PRATHER: I believe not, your Honor. THE COURT: Who are the three members? Do you want to participate? JUROR PINKERT: It's immaterial. I am satisfied with the position of the others. THE COURT: Do you want to participate? JUROR SMITH: No, sir. THE COURT: Do you want to participate? JUROR LINTHICUM: No, sir. THE COURT: You are satisfied not to enter into this discussion and arrive at the amount of the verdict? That is your desire? JUROR LINTHICUM: Now? THE COURT: Yes. JUROR LINTHICUM: Is there going to be a discussion? THE COURT: You may take part if you want to. JUROR LINTHICUM: In helping arrive at the figure? THE COURT: If it is your desire. JUROR SMITH: The verdict, the amount, your Honor—— THE COURT: You may take part in the discussion. The Court has not received any verdict, and you may still take part as you desire. Suppose we leave you here for a few minutes, clear the courtroom and just leave you right here and let you discuss it further. MR. GABEL: May I approach the bench, your Honor? THE COURT: Yes. (Discussion at the bench between the Court and Mr. Gabel.) THE COURT: Of course, ladies and gentlemen, you understand that only nine are required for a verdict, and we can receive the verdict from nine of you; but you all have a right to enter into the discussions to help fix the amounts of the different awards. You may just rap on the outside door there when you are through and the bailiff will let us know that you are ready. JUROR MARKUS: The nine of us have arrived—— THE COURT: Enter into some further discussion. They may want to take part in it. JUROR MARKUS: All right.''

A short time later proceedings were resumed in open court and the jury returned a verdict for plaintiff. The jury was polled. Nine jurors answered ''Yes,'' and the three jurors who had stated, in effect, that they did not want to participate in fixing the award, answered ''No.''

Appellants contend that they were deprived of their right to trial by a jury of twelve on the issue of the amount of

plaintiff's damages. We think that they were not. Assuming, without deciding, that the court was in error in telling the jury that only the nine people who voted in favor of the plaintiff could participate in fixing the amount of the verdict and that the three people who were for the defendants could not take part in fixing the amount (cf. *Earl* v. *Times-Mirror Co.*, 185 Cal. 165, 183 [196 P. 57]; *Balero* v. *Littell*, 124 Cal. App. 190 [12 P.2d 41]; *Nelson* v. *Superior Court*, 26 Cal. App.2d 119 [78 P.2d 1037]), the error was cured by the court later telling the jury that all members could participate at all stages in arriving at the amount of the verdict and that they all had a right to enter into the discussion to help fix the amount. █ There is nothing in the record to indicate that all of the jurors did not participate in the discussion as to the amount of the verdict after the court told them that they could do so. It is presumed that they did.

█ After a jury retires they are to be kept under the charge of an officer until three-fourths of them agree upon a verdict. (Code Civ. Proc., § 613.) When three-fourths have agreed upon a verdict, the verdict must be rendered. Upon polling the jury the verdict is complete if three-fourths of the jurors, or more, agree upon that verdict. (Code Civ. Proc., § 618.) The jury returned the verdict by the determination and concurrence of nine of its members. Nothing more is required. (Const., art. I, § 7.)

█ In denying the motion for a new trial, the trial judge must be deemed to have concluded that no prejudice was suffered by defendants as a result of his first telling the jury that only the nine who were in favor of the plaintiff could participate in fixing the amount of the verdict, because of his later telling them that they could do so. His conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong. (*Lafargue* v. *United Railroads*, 183 Cal. 720, 724 [192 P. 538]; *MacPherson* v. *West Coast Transit Co.*, 94 Cal.App. 463 [271 P. 509].) That we cannot fairly say.

█ Appellants' second point is that the court gave two instructions diametrically opposed to each other. Before retiring to deliberate in the first instance, the jury were instructed that it was the duty of jurors to consult with one another and to deliberate with a view toward reaching an agreement; that each juror must decide the case for himself, but should do so only after a consideration of the case with

694

his fellow jurors. This is California Jury Instructions Civil, 3d Edition, No. 7. (Others will be referred to by number.) It is urged that the instruction given when the jury returned to the courtroom, quoted above, to the effect that only the nine people who voted in favor of plaintiff could participate in fixing the amount of the verdict, is contradictory to No. 7. The point is not well taken. If the latter instruction is in conflict with No. 7, a point we do not decide, the conflict was cured when the court told the jury that all members could take part in fixing the amount of the verdict.

■ Appellants' third point is that the court erred in refusing to give six instructions offered by them, which they characterize as regarding their theory that a driver of a vehicle is entitled to rely upon the protection afforded drivers on boulevards and arterial highways in his approach to, and entry of, an intersection. Appellants' description of the refused instructions is incorrect. One of them only treats of the rights of a driver of a vehicle on boulevards and arterial highways in his approach to, and entrance of, an intersection. This instruction was properly refused. The accident occurred at an intersection controlled by "Stop" and "Go" signals then in operation. The rules governing a driver's approach to, and entrance of, such an intersection control here. ■ The other five refused instructions endeavor to treat of the rights of a driver in his approach to, and entrance of, an intersection controlled by "Stop" and "Go" signals in operation. We have read carefully these five instructions proffered and refused, and those given. The subject matter of the refused instructions was fully, fairly and completely covered by the instructions given. The court gave No. 138, requested by appellants, telling the jury that a person who, himself, is exercising ordinary care, has a right to assume that others, too, will perform their duty under the law; that he has a right to rely and act on that assumption; that it is not negligence for a person to fail to anticipate injury which can come to him only from a violation of law or duty by another; that there is an exception in that the rights defined do not exist when it is reasonably apparent to him, or, in the exercise of ordinary care, would be apparent to him, that another is not going to perform his duty; that one is not justified in ignoring obvious dangers, although created by another's misconduct; and that he is never excused from exercising ordinary care. The court, at the re-

quest of appellants, read to the jury the pertinent parts of Vehicle Code, section 476, prescribing the rights and duties of persons driving motor vehicles at an intersection controlled by "Stop" and "Go" signals, and it gave No. 141, further elucidating such rights and duties. These and other instructions given sufficiently covered all of the matters dealt with in the refused instructions. The trial judge was diligent in refraining from burdening the jury, and the record, with inapplicable instructions, and he used extreme care in avoiding unnecessary, complex and repetitious statements, and in informing the jury adequately on all of the issues actually involved in the case. Appellants do not complain of any instructions given. There was no error in refusing the offered instructions.

Our conclusion with respect to the points made by appellants for reversal makes it unnecessary to discuss respondent's suggestion that the notice of appeal is ineffective.

Judgment affirmed.

Shinn, Acting P. J., and Wood, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 4, 1947.