DOROTHY L. STYSKAL, APPELLEE, V. LEONARD L. BRICKEY, APPELLANT.

62 N. W. 2d 854

Filed February 19, 1954. No. 33459.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellant.

*Cranny & Moore,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Dorothy L. Styskal commenced this action in the district court for Douglas County against Leonard L. Brickey. It is a tort action arising out of an automobile accident. Plaintiff recovered a verdict and from an order overruling his motion for either a judgment notwithstanding the verdict or a new trial the defendant has appealed.

The accident in which appellee was injured happened shortly after 5 p. m. on Saturday, March 29, 1952. It occurred in the intersection of Twenty-first Street and Railroad Avenue. This intersection is located in South Omaha, Nebraska. Railroad Avenue is a through street carrying U. S. Highways Nos. 73 and 75. At its intersection with Twenty-first Street, Railroad Avenue is surfaced to a width of 64 feet. It has four lanes of travel, two each way, with a parking area at each curb. It runs in a northwesterly and southeasterly direction. Twenty-first Street is surfaced to a width of 24 feet and runs north and south, consequently it intersects Railroad Avenue at an angle. Twenty-first Street ends with Railroad Avenue but the intersection is completed by a slight jog to the east to connect with Gilmore Avenue which extends south from Railroad Avenue. Traffic at the intersection is controlled by two automatic signals. One signal is located just south of the south curb of Railroad Avenue at a point approximately 5 feet west of the west curb line of Twenty-first Street if it was extended across Railroad Avenue. The other is just north of the north curb of Railroad Avenue at a point where the east curb line of Gilmore Avenue would intersect the north curb of Railroad Avenue if the former was extended across Railroad Avenue. The traffic signal on the north side of Railroad Avenue is 137 feet east of the east curb line of Twenty-first Street,

thus making it necessary for a car traveling northwest on Railroad Avenue to travel that distance, after passing this traffic light, in order to reach and enter the actual intersection of Twenty-first Street and Railroad Avenue. At the time of the accident appellant was driving his 1950 Chevrolet sedan toward the northwest on Railroad Avenue in the outer lane for travel. At the same time Louis Styskal, appellee's father, was driving his 1933 Ford coach south on Twenty-first Street. Appellee was riding with her father, sitting on the right-hand side of the front seat. The impact of the two cars occurred in the intersection in the outer lane of traffic for west-bound cars. The Styskal car ran into the right side of appellant's car.

The first question presented is, did the conduct of the trial judge prevent appellant from having a fair trial? This question relates itself primarily to the language used by the trial judge in ruling on the admissibility of the testimony of several of appellant's witnesses and to voluntary comments of the trial judge relating thereto.

In this regard we have said: "In jury trials the credibility of a witness and the weight of his testimony are matters for the jury and not for the court. As stated in 64 C. J. 90: 'In accordance with the general rule that the judge presiding at a trial must conduct it in a fair and impartial manner, he should refrain from making any unnecessary comments or remarks during the course of a trial which may tend to a result prejudicial to a litigant or are calculated to influence the minds of the jury. A remark or comment which is shown to be prejudicial to the rights of the party complaining, or which is such that it may be assumed prejudice will result therefrom, is fatal to the validity of the trial; * * *.' And as stated in Abbott, Civil Jury Trials (5th ed.) 1082: 'Each party is entitled to have the jury pass upon the evidence without having its effect or importance altered, either as to credibility or value, by the indul-

gence of the court in remarks to witnesses or comments upon them or their testimony, which may tend either to magnify or diminish it in the jury's estimation.'" Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168.

"'In the trial of a cause before a jury, improper comments of the trial judge from the bench may be prejudicially erroneous where they tend to discredit a witness and his testimony.' McCulley v. Anderson, 119 Neb. 105, 227 N. W. 321. And as stated in In re Estate of Strelow, 117 Neb. 168, 220 N. W. 251: '* * * under our practice the jury are the sole judges of the credibility of the witnesses, and the weight to be given their testimony. Hence, it is our conclusion that such remark made by the trial judge was without the province of the court, and was erroneous and prejudicial.' See, also, Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168. Judges should be careful in jury trials and refrain from commenting upon witnesses or their testimony for each party is entitled to have the jury pass upon the evidence without having its effect or importance altered, either as to credibility or value." Stoffel v. Metcalfe Construction Co., 145 Neb. 450, 17 N. W. 2d 3.

We have come to the conclusion that the record leaves no doubt of the fact that appellant did not have a trial of his rights in the fair and impartial manner that our system of jurisprudence contemplates. Having come to this conclusion it would serve no useful purpose to quote the numerous comments of the trial judge that seriously reflect on the credibility of appellant's witnesses and the weight of their testimony.

Having come to the conclusion that a new trial must be had, we come next to the question of whether or not appellant's motion for a judgment notwithstanding the verdict should have been sustained. For the purpose of determining this issue we must apply the following principles in considering the evidence adduced:

"A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569.

"In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him." Stark v. Turner, *supra*.

Considering the evidence in this light we think it would support a jury's finding that appellant was guilty of one or more of the following specifications of negligence set forth in appellee's petition: "* * * That the Defendant violated the mandate of a red signal light governing him and directing him to stop, and ran through said red signal light. * * * That Defendant failed to yield the right of way to Plaintiff's automobile which was on his right, and which had first entered said intersection of 21st Street and Railroad Avenue."

"It is the duty of the trial judge to instruct the jury upon the law of the case, whether requested by counsel to do so or not, * * *." Shiers v. Cowgill, 157 Neb. 265, 59 N. W. 2d 407.

In view of the specifications of negligence set forth in the court's instruction No. 1 that find no support in the evidence and the general language of its instruction No. 4; we call attention to the following principles that are applicable thereto:

"'This court has often pointed out that it is error to submit issues upon which there is no evidence to sustain an affirmative finding. It is the duty of trial courts to determine the issues upon which there is competent evidence and submit them, and them only, to the jury. The submission of issues upon which the evidence is

insufficient to sustain an affirmative finding is generally very prejudicial and invariably results in a second trial.' (Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W. 2d 114.)'' Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501.

"As stated in 38 Am. Jur., Negligence, § 370, p. 1090: 'An instruction which does not limit negligence to that charged in the plaintiff's pleading, but authorizes recovery for negligence generally, is objectionable.' " Ellis v. Union P. R. R. Co., 148 Neb. 515, 27 N. W. 2d 921.

In its instruction No. 1 the court submitted the following: "* * * that defendant operated his automobile at the time and place at a speed greater than was reasonable and prudent, having regard for the traffic and use of the street."

By its instruction No. 7 the court advised the jury that: "There is no testimony in this case of excessive speed of either of the drivers, so that question need not be considered by you, * * *."

When a specification of negligence finds no support in the evidence it should be omitted. It is not good practice to submit it and then advise the jury it need not be considered.

We come then to the question of the conduct of the driver of the car in which appellee was riding and whether or not, if negligent, it could be found to be the sole proximate cause of the accident. The first contention in this regard is that the trial court refused and failed, although requested to do so, to instruct the jury that the driver of the car in which appellee was riding was required to stop at a stop sign located on the west side of Twenty-first Street for traffic approaching the intersection on that street. It becomes apparent, from what has been said, that traffic approaching Railroad Avenue on Twenty-first Street was confronted with two signals, that is, the automatic signal light and a stop sign. It is apparently appellant's thought that the driver of

the car in which appellee was riding was under obligation to obey both.

Bearing in mind that Railroad Avenue is a state highway carrying U. S. Highways Nos. 73 and 75 it would ordinarily, because of the stop sign, be the duty of any driver of a vehicle approaching it to come to a full stop as near the curb line as possible before driving onto it and give the right-of-way to vehicles upon the highway until such time, after stopping, as he could drive onto the highway without interfering with the traffic thereon. See §§ 39-724 and 39-754, R. R. S. 1943.

As stated in Meyer v. Hartford Bros. Gravel Co., 144 Neb. 808, 14 N. W. 2d 660: "A driver of a motor vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be imprudent for him to proceed into the intersection." See, also, Schrage v. Miller, 123 Neb. 266, 242 N. W. 649; Simcho v. Omaha & C. B. St. Ry. Co., supra; Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643; Dorn v. Sturges, 157 Neb. 491, 59 N. W. 2d 751.

But section 39-767, R. R. S. 1943, provides: "* * * that local authorities shall have power to provide by ordinance for the regulation of traffic by means of traffic officers or semaphores or other signaling devices on any portion of the highway where traffic is heavy or continuous, * * *."

The city of Omaha has provided by ordinance as follows:

Section 55-3.2 provides: "Operators of all vehicles and street cars are required to observe the instructions of all traffic signs placed under the provisions of this Article. Such signs shall include all lettered signs, all buttons in streets or on curbing, all mechanical traffic signals, and all paint or other markings placed upon the surface of the roadway. Such signs shall be held to

have the same authority as the personal direction of a Police Officer."

Section 55-7.19 provides: "Where stop signs have been placed at any intersection, upon a boulevard, school zone, or upon any other street, it shall be unlawful for the operator of a vehicle to proceed past such stop sign until such operator has brought his vehicle to a complete stop at the stop sign."

Section 55-3.3 provides: "Whenever traffic at an intersection is controlled by a traffic control signal, exhibiting colored lights, or written directions, such lights or directions shall indicate as follows:

"GREEN OR 'GO': Traffic facing the signal may proceed, except the vehicular traffic shall yield the right-of-way to pedestrians lawfully entering a crosswalk or intersection at the time such sign was exhibited.

"YELLOW OR 'CAUTION': Traffic facing the signal shall stop before entering the nearest crosswalk in the intersection unless so close to the intersection that a stop cannot be made in safety.

"RED OR 'STOP': Traffic facing the sign shall stop before entering the nearest crosswalk in the intersection or at such other point as may be designated by signs or markings placed by the Superintendent and remain standing until Green or Go is shown."

Section 55-7.18 provides: "Every driver of a vehicle or street car or other conveyance traveling upon any street intersecting any through street above designated, shall stop such vehicle, street car, or other conveyance at the place where such street meets the prolongation of the nearest property line of such through street or at such point where signs have been erected, subject, however, to the direction of any traffic control sign or signal or any Police Officer at any such intersection."

It will thus be observed the city of Omaha enacted ordinances to control situations of this kind and gave traffic control signals or directions by police officers precedence over stop signs. This would only seem

logical. To hold that traffic entering a through street or arterial highway had to obey both would only increase traffic difficulties and not decrease them. See, Sam v. Sullivan (Tex. Civ. App.), 189 S. W. 2d 69; Carlin v. Prickett, 81 Cal. App. 2d 688, 184 P. 2d 945.

The court instructed the jury: "* * * the testimony is undisputed that plaintiff's driver had a green light across the street from him, opening that street to traffic by him." It would seem from this, and other language that followed, that the jury could reasonably infer that appellee, because the light across Railroad Avenue was green, had an absolute right to proceed. The correct principles in regard thereto are as follows: "A 'go' signal at a street intersection confers no authority on the driver of an automobile who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go but a qualified permission to proceed lawfully and carefully in the direction indicated: * * *." Harris v. Moran, 121 Pa. Super. 16, 182 A. 660.

A motor vehicle having started to cross an intersecting street in accordance with the signal light is ordinarily entitled to complete the crossing notwithstanding a change in lights.

A vehicle entering a street intersection with a traffic light in his favor is under obligation to use due care and to yield the right-of-way to vehicles in the intersection. His right-of-way is subject to the rights of those already in the intersection. See, Capillon v. Lengsfield (La. App.), 171 So. 194; Galliano v. East Penn Electric Co., 303 Pa. 498, 154 A. 805; Spence v. Waters, 39 Del. 582, 4 A. 2d 142; Valench v. Belle Isle Cab Co., 196 Md. 118, 75 A. 2d 97; United States Fidelity & Guar. Co. v. Continental B. Co., 172 Md. 24, 190 A. 768; Schindler v. Gage (La. App.), 59 So. 2d 215; 5 Am. Jur., Automobiles, § 309, p. 671; 60 C. J. S., Motor Vehicles, § 360, p. 854.

As stated in 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 1005, p. 256: "* * *

the 'go' signal confers no authority to proceed across the intersection, regardless of other persons or vehicles already within it."

It should be understood that even though the driver of a motor vehicle has the right-of-way he must always use ordinary care and prudence to avoid an accident. Caryl v. Baltimore Transit Co., 190 Md. 162, 58 A. 2d 239; Byrne v. Schultz, 306 Pa. 427, 160 A. 125.

In regard to this duty it is stated in Byrne v. Schultz, *supra*: "The signal to cross is not a 'command to go, but a qualified permission,' and the qualification is 'to proceed lawfully and carefully,' as a prudent man would under the circumstances, which certainly requires looking to the right and left before entering upon the intersecting street."

We stated in Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596: "The driver of an automobile entering an intersection of two streets or highways is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger."

And as stated in Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673: " '* * * to look for vehicles approaching on the highway implies the duty to see what was in plain sight.' Vandervert v. Robey, 118 Neb. 395, 225 N. W. 36, citing Kemmish v. McCoid, 193 Ia. 958, 185 N. W. 628."

However, in this regard: "A person traveling a favored street protected by a traffic signal, of which he has knowledge, may properly assume that oncoming traffic will obey it." Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507.

That the jury should understand these principles has particular application here because, from the evidence adduced, a jury could find that both drivers entered the area controlled by the automatic signals on a green light, that is, the lights could have changed while the appellant was traveling the 137 feet to the actual intersection of Railroad Avenue and Twenty-first Street. If

the jury so found it was important that it be advised of the law then applicable.

Likewise it was important that the jury be advised in regard to appellant's contention, as pleaded, that the conduct of the driver of the car, in which appellee was riding, was the proximate cause of the accident, particularly in view of the fact that he testified he did not see appellant's car until the moment of the impact.

Such defense is not an affirmative plea in avoidance of appellee's cause of action and imposes no burden of proof upon appellant with relation thereto but is one entirely consistent with and provable under the general issue. However, some place in the instructions the jury should be advised that if it should find the sole proximate cause of the accident in which appellee was injured was the negligence of the driver of the car in which she was riding then its verdict should be for the appellant. See, Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21; Harding v. Hoffman, *ante* p. 86, 62 N. W. 2d 333.

This is particularly true in view of the fact that the trial court, under the evidence here adduced, should advise the jury: " 'Where separate independent acts of negligence by different persons combine to produce a single injury, each participant is liable for the resulting damages, although one of them alone might not have caused the injury. * * *.' McClelland v. Interstate Transit Lines, 142 Neb. 439, 6 N. W. 2d 384." Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682.

Under the situation disclosed by the evidence adduced the following has application to the imputation to appellee of the negligence, if any, of which the driver of the car in which she was riding may have been guilty:

"It is the law of this state that in cases of this character negligence of the driver cannot be imputed to a guest in the automobile." Gleason v. Baack, 137 Neb. 272, 289 N. W. 349.

"The negligence of a person while driving an auto-

mobile with another as his guest may not ordinarily be imputable to the guest; but such guest may be responsible for the consequences of his own negligence." Kuska v. Nichols Construction Co., *supra.*

We come then to the duty of a guest in a car and whether or not the evidence adduced presents a question of fact in this regard. We have often stated the rules applicable to a guest. In Kuska v. Nichols Construction Co., *supra,* we said:

"The duty of a guest riding in an automobile is to use care in keeping a lookout commensurate with that of an ordinarily prudent person under like circumstances. The guest is not required to use the same degree of care as devolves upon the driver. If the guest perceives danger, or if at certain times and places should anticipate danger, he should warn the driver. Ordinarily, the guest need not watch the road or advise the driver in the management of the car.

"It is the duty of an invited guest in an automobile driven by another, with knowledge of approaching danger, to exercise ordinary care to warn the driver of the danger, unless to a reasonably careful, cautious, and prudent person it appears that the warning would be of no avail or go unheeded, or that the driver observed or should have observed the danger, as well as the guest, and for failure to give such warning the guest would be chargeable with contributory negligence.

"It is the duty of an invited guest, with knowledge of approaching danger, in the exercise of ordinary care to protest to the host if there is time and opportunity, unless it reasonably appears that such protest would go unheeded or would be of no avail, and for failure so to do the guest would be chargeable with contributory negligence."

. See, also, Gleason v. Baack, *supra;* Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610; Erickson v. Morrison, 152 Neb. 133, 40 N. W. 2d 413; Hendrix v. Vana, 153 Neb. 531, 45 N. W. 2d 429.

The evidence discloses appellee's father had been driving a car for about 40 years; that he was familiar with this intersection as he had crossed it several times daily in taking his wife to and from work, which he had been doing for many months; that the intersection, at the time, presented nothing new or different in the way of hazards; and that it was a bright and clear day with the sun shining.

Under this situation we think the following quote from Lewis v. Rapid Transit Lines, 126 Neb. 158, 252 N. W. 804, in Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178, has application: " 'Ordinarily, the guest passenger in an automobile has a right to assume that the driver is a reasonably safe and careful driver; and the duty to warn him does not arise until some fact or situation out of the usual and ordinary is presented.' "

Under the evidence adduced we do not think it could reasonably be concluded that appellee was guilty of any negligence which contributed to her injury.

We come then to the excluded testimony of police officers Morris Dyles and William F. Carney. These police officers responded to a call and arrived at the scene of the accident in a cruiser car. They arrived shortly after the accident happened and before either of the cars had been moved. They made a report in accordance with section 39-764, R. R. S. 1943. This statute provides: "* * * that all reports made by an officer of the Nebraska Safety Patrol, sheriffs or their deputies, police officers, and village marshals, or made to or filed with such officers in their respective offices or departments, or with, by, or to any other law enforcement agency of the state shall be open to public inspection, but accident reports filed with the Department of Roads and Irrigation shall not be open to public inspection. The fact that such reports have been so made shall be admissible in evidence solely to prove a compliance with this section, but no such report or any part thereof or statement contained therein shall be ad-

missible in evidence for any other purpose in any trial, civil or criminal, arising out of such accidents."

We think, because of the foregoing, the court properly excluded the report. See, McBride v. Stewart, 227 Iowa 1273, 290 N. W. 700; Rockwood v. Pierce, 235 Minn. 519, 51 N. W. 2d 670; Jakubiec v. Hasty, 337 Mich. 205, 59 N. W. 2d 385. But as to testifying to what they observed at the scene these police officers stand in no different position than any other witness. If sufficient foundation is laid to show that the conditions they observed are the same as existed immediately following the accident, the officers should be permitted to testify in regard to what they observed insofar as it is relevant and material to the issues here involved. This would include their observation of the operation of the traffic lights. See Rockwood v. Pierce, *supra*. In this regard they may use the report to refresh their memory.

While there are other questions raised they become immaterial in view of what we have already said since the cause must be returned to the district court for retrial. The order of the district court denying a new trial is vacated and set aside and the cause is returned to the district court for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.