[Civ. No. 21622.   Second Dist., Div. Two.   Sept. 25, 1956.]

ISABELLA DAMIANI et al., Appellants, v. SANTOS ESTERAN MARTINEZ, Respondent.

Harry K. Mulholland for Appellants.

Hunter & Liljestrom for Respondent.

FOX, J.—This is an appeal from a judgment in favor of defendant after a jury verdict in a personal injury action arising from an intersection collision. The appeal is based on the ground that it was prejudicial error to refuse to give certain instructions charging defendant with the duty of stopping before entering the intersection.

The accident occurred around noon on March 1, 1954, at the intersection of Firestone Boulevard and Holmes Avenue. The day was clear and dry. Firestone Boulevard is a six-lane thoroughfare running in an east-west direction. It is approximately 70 feet wide in the area here involved, and carries three lanes of traffic on each side of a double center line. Holmes Avenue is a two-lane highway laid out in a north-south direction, and is 28 feet wide. Holmes Avenue, at the place of the accident, does not completely cross Firestone Boulevard but flows into it from the north only. The prolongation of Holmes Avenue is located some 100 feet to the west. The picture, therefore, presented at the place of the collision is that of Holmes Avenue joining Firestone Boulevard to form a "T" intersection, the upper horizontal bar of which is Firestone Boulevard.

This intersection was controlled by traffic lights which flashed, red, green and amber signals. Three such signal lights were located at the intersection, two of which controlled

east-west traffic on Firestone Boulevard. The third traffic light was placed at the south curb of Firestone to face north towards Holmes Avenue, its function being to regulate traffic proceeding south on Holmes in the approach to Firestone. There was, in addition, a boulevard stop sign installed on the west side of Holmes Avenue, approximately 12 to 15 feet north of Firestone Boulevard. It was visible to southbound traffic on Holmes Avenue. At the time of the accident all of these traffic lights were in operation. However, through some unexplained mischance, the signal normally governing traffic southbound on Holmes was so twisted from its normal position that the color of its light was not visible to a motorist approaching the intersection.

Plaintiffs Damiani are husband and wife and just prior to the accident they were traveling west on Firestone in an automobile driven by Mr. Damiani. They approached the intersection from the lane of traffic closest to the center line at a speed of 20-25 miles per hour. When he was approximately 200 feet from the intersection, Mr. Damiani observed that the traffic signal on Firestone was red for westbound traffic. Three or four cars in the lanes to his right had already been stopped by that light, but there were no vehicles ahead of him in his lane. When he was about 50 feet from the intersection, the light changed to green for westbound traffic. Upon the signal's changing to green, Mr. Damiani observed one or two of the stationary cars in the lanes to his right start to move forward and then suddenly stop. His car was three or four car-lengths from the intersection when he first observed the cars start up and about two car-lengths therefrom when he saw them stop. Mr. Damiani continued forward at the same speed into the intersection and collided with defendant's car, which was in the process of making a left turn. The point of impact was approximately 9 feet west of the east curb of Holmes Avenue and 37 feet south of the north curb of Firestone Boulevard.

Defendant testified that he lived south of Firestone Boule-vard and that his wife worked north of the boulevard near Holmes Avenue. It was his custom to drive her home from her place of employment. Prior to the accident, he had driven north on Holmes Avenue to meet his wife and then started south on that avenue. He approached the intersection at a speed of 15 to 20 miles an hour. He testified that he observed that the traffic light facing north up Holmes Avenue was not

working.* Two westbound cars on Firestone were approaching the intersection as he neared it. Defendant could not see the state of the traffic signals for east-westbound traffic. He testified that he stopped his car for 30 or 40 seconds near the boulevard stop sign, and while he waited the westbound cars on Firestone came to a halt at the intersection. He thereupon drove slowly into the intersection, and was going about 5 miles an hour when the accident occurred.

A different version of defendant's conduct was given by one William Wickenberg, who testified that he observed defendant's car approach the intersection at a speed of 30 to 35 miles an hour just as the signals for east and west traffic on Firestone were changing to green. He testified that defendant's car seemed to increase its speed as it entered the intersection after the green signal was in effect for traffic on Firestone Boulevard. He testified defendant made no stop at the corner of Firestone and Holmes.

Plaintiffs do not challenge the sufficiency of the evidence to support the judgment. They assert, however, that the court committed prejudicial error in failing to give certain instructions requested by them relating to defendant's duty to halt at an intersection marked with a boulevard stop sign. They complain primarily that the court failed to give the following instructions:

1. (Veh. Code, § 577.) "The driver of any vehicle upon approaching any entrance of a highway or intersection, or railroad grade crossing, sign-posted with a stop sign as provided in this code, except as otherwise permitted or directed in this code, shall stop: (a) Before entering the crosswalk on the near side of the intersection or, if none, then at a limit line when marked otherwise before entering such highway or intersection."

2. (Veh. Code, § 552): "The driver of any vehicle shall stop as required by Section 577 of this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard."

---

*In their briefs appellants state that when defendant first crossed Firestone Boulevard from the south en route to his wife's place of employment, he at that time noticed "that the signals for north and southbound traffic on Holmes were not working." This is not borne out by the record so far as the traffic signal here involved is concerned. The record shows defendant was referring solely to the traffic signal controlling northbound traffic, obviously on the section of Holmes Avenue south of Firestone.

3. An instruction that inexcusable or unreasonable conduct in violation of appropriate sections of the Vehicle Code constitutes negligence *per se.*

It is at once manifest that the trial court correctly refused to read to the jury the aforementioned provisions of the Vehicle Code or to instruct the jury that a violation thereof without excuse would charge defendant with negligence *per se.* By their plain terms, these sections state the rule enacted specifically for the purpose of governing the conduct of motorists entering intersections of boulevards and arterial highways not controlled by mechanical or electrical "Stop" and "Go" traffic signals. They were not formulated to impose a statutory criterion of conduct for motorists proceeding into an intersection at a time when electrical stop-and-go signals are in operation as the traffic control device.

"Where the intersection of a boulevard or arterial highway with another roadway is controlled by a traffic signal light, the direction of the light controls the right of way, and not the usual rule at stop and arterial highways." (7 Cal. Jur.2d, § 242, p. 54; *Carlin* v. *Prickett,* 81 Cal.App.2d 688 694 [184 P.2d 945].)

It is not the law that because the traffic light controlling Holmes Avenue traffic was askew and not visible to defendant, he was under a duty enjoined by statute to come to a complete stop before entering Firestone Boulevard regardless of the directional signals of the lights then controlling east-west traffic thereon. No provision of the Vehicle Code demands this. The reasonableness of defendant's conduct, under the particular circumstances then confronting him, in driving into a signal-controlled intersection without stopping, if he did so, was a question of fact for the jury to determine without reference to statutory rules that have been prescribed for an entirely different type of intersection. Granted that to enter an intersection controlled by electric traffic lights without knowing definitely the color of the light may be incompatible with the ordinary care required of a reasonably prudent man, that result does not flow from any violation of section 577 or 552, which do not purport to cover the situation here presented. Plaintiffs themselves concede, in their brief, that "the situation here involved is not specifically provided for in the Vehicle Code." It would be egregiously improper to instruct that defendant was guilty of negligence *per se* if by his conduct he has contravened statutes not designed to encompass within their purview the conduct in

question. The mischief of instructing that defendant's failure to stop as provided by sections 577 and 552 constituted negligence *per se* is graphically illustrated by postulating the situation wherein defendant motorist entered the intersection in question without stopping though the signal was in fact green in his favor and red for east-west traffic. Under the inexorable logic of plaintiff's theory, defendant must be charged with negligence *per se* though east-west traffic was in fact halted by virtue of the red light and the right of way was his to claim. It would be unfortunate if such an inequitable result were to be countenanced by resort to a Procrustean manipulation of inapplicable statutes. The law sets no such statutory trap for the unwary. (See *Carlin* v. *Prickett, supra*; 7 Cal.Jur.2d, § 242, p. 54.)

█ Equally without merit is the claim that the court's refusal to give the following instructions was erroneous: "If you find that a party to this action was approaching an intersection wherein the traffic signal controlling his avenue of traffic was defective and inoperative and if you further find that such party had notice of the defective and inoperative condition of the signal, and if you further find that there was a boulevard stop sign present at the intersection in question, you are instructed that it was the duty of such motorist before entering the intersection to make a complete stop at the boulevard stop sign before entering the intersection." This is patently an incomplete, inaccurate and misleading statement. There existed no such requirement of an absolute and unqualified duty to stop on the part of defendant, as set out in the instruction, at the type of intersection here involved. The instruction fails entirely to take cognizance of the fact that east-west traffic at this intersection was being controlled by traffic signals and ignores the directional signal of those lights and the state of the traffic responding to those lights. It was for the jury to decide under the evidence and the instructions given (none of which are challenged) whether the exercise of ordinary care required a "complete stop at the boulevard stop sign" in the light of the prevailing conditions. Since plaintiffs' instructions purported to lay down a categoric rule nowhere to be found in the Vehicle Code that would have usurped the jury's function as trier of the facts. it was properly refused.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.